El Pueblo de Puerto Rico, demandante y peticionario, *v.* Carlos L. Rey Marrero, acusado y recurrido.

*Número:* O-80-112      *Resuelto:* 30 de abril de 1980

---

(27) Voto separado *Pueblo* v. *Pagán Rivera,* 105 D.P.R. 493, 497 (1977).

*Héctor A. Colón Cruz, Procurador General* y *Miguel A. Santana Bagur, Procurador General Auxiliar*, abogados del recurrente; *Miguel T. Morales Adames* y *José Manuel Cruz Ellis*, abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

■ Resolvemos en el presente recurso que la identificación del imputado, hecha en el acto del juicio por testigos oculares de los hechos delictivos ventilándose, es admisible bajo las circunstancias aquí presentes, no empece que durante el curso de la investigación policíaca se utilizara, para fines de su identificación por dichos testigos, una fotografía tomádale al imputado sin su consentimiento y mientras permanecía detenido ilegalmente en un cuartel de policía. Consideramos, además, que el planteamiento para suprimir el testimonio sobre su identificación, se hizo en este caso tardíamente.

I

Veamos los hechos. Ante el Tribunal Superior, Sala de San Juan, se inició juicio por jurado contra Carlos L. Rey Marrero bajo acusaciones de asesinato en primer grado, robo y dos infracciones de la Ley de Armas. Se le imputó que en la noche del 20 de agosto de 1979 dio muerte al señor Luis Alberto Díaz Díaz, dueño de un establecimiento comercial conocido por Supermercado Fulton, en ocasión de un asalto y robo a dicho establecimiento. Reproducimos a continuación el resumen de la prueba como aparece en la petición de *certiorari* ante nos.

"La noche en que ocurrieron los hechos, a eso de las 9:00 p.m., el joven Luis A. Díaz Mercado, de quince (15) años de edad siguiendo las instrucciones de su padre, salió del negocio y se mantuvo vigilante. Observó cuando se detuvo en dos ocasiones un automóvil pequeño, de color azul, como un Toyota, que pasó en forma sospechosa, lentamente y sus ocupantes mirando hacia el negocio. Se lo notificó a su padre quien salió del negocio y se sentó en un cajón de distribuir leche. Momentos después vio que el auto pasó por el

frente de él y se estacionó detrás del camión de su padre. El lugar estaba totalmente iluminado por las luces del negocio y de otro comercio que hay en el lugar. Al detenerse el carro, sus ocupantes estuvieron dentro como tres (3) minutos y luego se bajó un individuo a quien el testigo Díaz Mercado describió ampliamente y posteriormente identifica como Alfredo Cintrón Maldonado (coautor), quien no es el acusado en este caso. Este individuo se dirige hacia el interior del negocio y el dueño del negocio (el occiso) entró tras él.

"Continuó observando el testigo Díaz Mercado y ve que inmediatamente que se bajó el primer individuo del automóvil, se bajó un segundo individuo (el acusado) a quien describe ampliamente. El acusado caminó hacia el negocio y se paró frente a la puerta del negocio mirando hacia el interior. Indicó el testigo Luis A. Díaz Mercado que tuvo la oportunidad de observarlo por espacio de dos (2) a tres (3) minutos.

"Observó el testigo Díaz Mercado que su padre salió y cerró la puerta del negocio—una de las hojas de la puerta que quedaba abierta. Cuando su padre caminó hacia la calle, observó que el acusado sacó de su cintura un revólver y le hizo un disparo a su padre. El acusado se encontraba como a dos pies del occiso cuando le hizo el disparo. Al ver lo ocurrido, el testigo corrió a donde una vecina y llamó la policía. A su regreso, ya a su padre se lo habían llevado. Indicó que cuando fue a llamar a la policía, escuchó varias detonaciones de un arma de fuego (dichas detonaciones las hizo el dueño de un negocio vecino para asustar a los asaltantes). Declaró que no sabía cuál de los cuatro (4) individuos manejaba el automóvil, pero que sí sabía que el acusado fue el segundo individuo que se bajó del vehículo, lo vio caminar hasta el frente de la puerta y tuvo la oportunidad de verlo claramente. Indicó que desde que vio el automóvil sospechoso hasta que el acusado le disparó a su padre, transcurrieron de seis (6) a siete (7) minutos.

"Al testigo Díaz Mercado se le mostraron varios álbumes de fotografías, de entre las cuales pudo identificar al coacusado Wilfredo Cintrón Maldonado. No pudo identificar al acusado Carlos L. Rey Marrero; su fotografía no se encontraba entre las que se le mostraron al testigo. El día 13 de septiembre de 1979 el testigo prestó declaración jurada sobre los hechos del caso y describió adecuadamente a dos de los asaltantes, siendo el acusado Carlos L. Rey Marrero uno de ellos.

"Con posterioridad se le mostraron al testigo dos álbumes de fotografías adicionales en el Supermercado Fulton, de entre las

cuáles identificó positivamente al acusado. No se levantó acta alguna con relación a este procedimiento.

"El día 18 de septiembre de 1979 el testigo fue citado al Cuartel General de la Policía para que observara la celebración de una rueda de detenidos. El testigo nuevamente identifica positivamente al acusado. De este procedimiento se levantó la correspondiente acta.

"Durante el juicio, el testigo realizó en sala una tercera identificación positiva del acusado, tanto a preguntas del Ministerio Público como de la defensa.

"Por su parte, la testigo de cargo Nilka Mercado, cuñada del occiso que se desempeñaba como cajera en el supermercado cuando ocurrieron los hechos, narró la forma en que sucedieron los eventos dentro del negocio e identificó positivamente tanto al coacusado como al acusado Rey Marrero. Indicó que pudo observar al acusado de frente y a través de un cristal por espacio de tres (3) segundos.

"Originalmente a la testigo se le mostraron varios álbumes de fotografías de entre los cuales pudo identificar al coacusado, pero no al acusado (su fotografía no se encontraba entre aquellas que se le mostraron); con posterioridad identificó positivamente al acusado de entre otras fotografías que se le mostraron en el supermercado. El día 18 de septiembre de 1979, en el Cuartel General de la Policía, identificó nuevamente al acusado en una rueda de detenidos. Se levantó la correspondiente acta de dicho procedimiento de confrontación.

"Una vez concluido el testimonio de la señora Nilka Mercado, el Ministerio Público sentó a declarar al Patólogo que investigó la causa que motivó la muerte del señor Luis A. Díaz Díaz y puso a la disposición de la defensa el testimonio de agente Serrano, persona que investigó el caso.

"La prueba de defensa (coartada) fue presentada por tres (3) testigos. En ausencia del jurado y para los fines de atacar la identificación que se hiciera del acusado como uno de los autores de los delitos imputados, la defensa presentó el testimonio del acusado y el de otro testigo de defensa. El acusado manifestó que a mediados de septiembre de 1979 fue intervenido en una pizería por agentes del orden público, quienes lo condujeron junto a un amigo al Cuartel de Puerto Nuevo. De ahí lo llevaron al Cuartel General en donde, luego de hacerle varias preguntas, le tomaron una fotografía y sin informarle la razón de la detención, lo regresaron al Cuartel de Puerto Nuevo de donde le permitieron irse a su casa. Alegó el

acusado que el agente Edwin Cotto, entre otros agentes, lo había detenido.

"El Ministerio Público por vía de refutación presentó el testimonio del agente Edwin Cotto quien manifestó que vio la intervención de los agentes cuando detuvieron al acusado, pero desconocía la razón por la cual fue detenido.

"El agente Serrano declaró y aseguró que la fotografía del acusado no estaba en los álbumes que mostró originalmente, pero que ésta se encontraba en los que mostró en fecha posterior. No supo explicar el origen de la fotografía.

"La defensa solicitó la supresión de la identificación y el Hon. Tribunal de Instancia la declaró con lugar.

"Resolvió el Honorable Tribunal de Instancia que habiendo ocurrido una detención ilegal [durante la cual la policía le tomó una fotografía al acusado que posteriormente resultó útil para su identificación como el autor de los delitos aquí imputados], era de aplicación al caso de autos la regla de exclusión de evidencia de nuestra constitución, y en consecuencia, ordenó la supresión de la identificación del acusado [hecha en las distintas etapas del proceso] por entender que había sido el producto de una foto adquirida en una detención ilegal del acusado."

A solicitud del fiscal el tribunal detuvo los procedimientos para permitir al Ministerio Público recurrir ante nos. Así lo hizo el Procurador General mediante petición de *certiorari.* Concedimos términos al imputado recurrido para comparecer y mostrar causa por la cual no deba expedirse el auto y revocar la resolución del tribunal de instancia. El imputado ha comparecido en un extenso escrito de fecha 11 de abril de 1980.

## II

Ante una situación de hechos muy similar a la del caso de autos, resolvió el Tribunal Supremo federal en *United States* v. *Crews*, en decisión unánime de 25 de marzo de 1980, 445 U.S. 463, que la identificación hecha en el acto del juicio (*in-court identification*) era admisible. Los hechos de dicho caso pueden resumirse así: Una mujer fue asaltada a punta de pistola en una sala de descanso del monumento a Washington en la capital federal. Inmediatamente después ella notificó a

la policía y dio una descripción completa del asaltante. Varios días después se observó al acusado Crews, cuya descripción coincidía con la que ella diera, merodeando cerca del mismo lugar. Interceptado por agentes del orden, Crews dijo tener diez y seis años de edad y que se había salido de su escuela. Un policía trató de fotografiarlo con una cámara de exposición instantánea, pero no le funcionó. Como el joven respondía a la descripción del asaltante, que era la misma dada por otras dos mujeres que fueron también asaltadas en condiciones similares, en el mismo sitio, se le detuvo, fue llevado a una estación o cuartel de policía, se le tomó una fotografía, y se notificó a su escuela. Al igual que en nuestro caso, no se le formuló denuncia alguna. Al cabo de una hora, se le dejó en libertad.

Al otro día la policía mostró a la víctima un grupo de ocho fotografías en que se incluía la tomada a Crews. Ella había examinado numerosas fotografías antes, sin resultado positivo. Al examinar estas ocho, identificó enseguida a Crews como su asaltante. Se detuvo a Crews y más tarde fue también identificado por la víctima en rueda de detenidos. Crews fue luego formalmente acusado por los hechos por un gran jurado.

Oportunamente, antes del juicio, Crews presentó moción para suprimir todo el testimonio sobre su identificación, por estar basado en su detención ilegal. El tribunal de instancia le sostuvo en cuanto a que su identificación mediante la fotografía y luego en rueda de detenidos eran inadmisibles, pero concluyó que en el juicio, su identificación por la víctima era admisible por estar basada en su recuerdo independiente, no maculado por el proceso identificativo de la fotografía. Durante el juicio la víctima identificó a Crews positivamente como su asaltante y fue convicto.

El ilustrado juez de instancia, al resolver que la identificación del aquí recurrido en el acto del juicio estaba tan viciada como la hecha mediante fotografías y en rueda de detenidos, no tuvo el beneficio de la decisión en *Crews* que,

como hemos visto, se produjo el 25 de marzo de 1980. Si acaso, pudo persuadirle, por el contrario, la decisión del mismo caso hecha en apelación por la District of Columbia Court of Appeals—*Crews* v. *United States*, 389 A.2d 277 (D.C. 1978)— que había revocado la convicción por entender que la identificación en el acto del juicio era "fruto del árbol venenoso", doctrina enunciada en *Wong Sun* v. *United States*, 371 U.S. 471 (1963) y *Silverthorne Lumber Co.* v. *United States*, 251 U.S. 385 (1920).

Al revocar al Tribunal de Apelaciones del Distrito de Columbia y mantener por tanto la validez de la convicción de Crews, dijo el Tribunal Supremo federal:

"En el lenguaje de la 'desgastada por el tiempo metáfora' del árbol venenoso, *Harrison* v. *United States*, 392 U.S. 219, 222 (1968), la toxina en este caso fue inyectada después de que el capullo evidenciario hubo florecido; la fruta servida en el juicio no estaba envenenada."

Como en el citado caso de *Crews*, en el que aquí consideramos se produjo una detención ilegal del imputado Rey Marrero. La prueba no dejó establecido que éste hubiera sido identificado como uno de los asaltantes del Supermercado Fulton antes de su detención en la pizería a mediados de septiembre de 1979. El hecho de que su descripción pudiera coincidir con la que fuera dada por los testigos Luis Díaz Mercado y Nilka Mercado no autorizaba, sin más, su detención. Bajo circunstancias más extremas se entendió en *Crews* que su detención fue ilegal. En dicho caso, aparte de la descripción dada por la víctima, hubo otras descripciones por otras víctimas de asaltos similares que coincidían con la descripción de Crews, éste fue sorprendido en la escena del crimen por agentes que conocían de tales hechos y de las descripciones dadas, y pudieron constatar que el joven Crews era un escapado de su escuela. No obstante, se resolvió que su detención, sin una orden de arresto, fue ilegal. Dijo el Tribunal:

"En cuanto a la impugnación que hace el recurrido de su propia

presencia en el acto del juicio, él no puede reclamar inmunidad contra su enjuiciamiento simplemente porque su comparecencia a corte fuera precipitada por un arresto ilegal. Un arresto ilegal, sin más, nunca se ha considerado como impedimento para un subsiguiente encausamiento, ni como defensa contra una válida convicción. [Citas] El principio de exclusión de *Wong Sun* y *Silverthorne Lumber Co.* delimita la prueba que el Gobierno puede ofrecer contra el acusado en el juicio, cerrando la puerta de la corte a pruebas obtenidas mediante actos oficiales ilegales. El recurrido no es en sí mismo una 'fruta' suprimible, y la ilegalidad de su detención no puede privar al Gobierno de la oportunidad de probar su culpabilidad mediante la presentación de pruebas totalmente libres de la mancha de la conducta indebida de la policía."

Al distinguir entre la prueba de identificación mediante la fotografía y la identificación en el acto del juicio, expresó el Tribunal en *Crews:*

"... La identificación antes del juicio obtenida mediante el uso de la fotografía tomada durante la detención ilegal del recurrido no puede ser admitida; pero la identificación hecha en el acto del juicio es admisible, aun si se acepta el argumento del recurrido, porque el conocimiento que tenía la policía de la identidad del recurrido y el recuerdo independiente que de él tenía la víctima, ambos eran de fechas anteriores al arresto ilegal y no estaban por tanto maculadas por la violación constitucional. ..."

No estamos resolviendo que una fotografía de una persona, utilizada sin su consentimiento para fines de su identificación, anule el proceso investigativo. Ya en *Pueblo* v. *Domínguez Fraguada*, 105 D.P.R. 537, 545 (1977), resolvimos que la policía puede utilizar en el proceso investigativo y para fines de identificación el retrato de un sospechoso de delito adherido a una solicitud de licencia para conducir vehículos de motor obrante en el Departamento de Obras Públicas. Señalamos, pág. 545, que: "La protección contra registros irrazonables tiene un costo social que ha de medirse en cada caso por el grado de obstrucción que enfrenta a la investigación criminal y por su efecto frustrante del propósito central del juicio que es buscar y fijar la verdad."

■ No podemos sancionar, sin embargo, que en su labor investigativa tenga mano libre la policía para detener a las personas en cualquier sitio en que se encuentren pacíficamente—el hogar, la casa de un amigo, el sitio de trabajo, el colmado, una pizería—y conducirlas a sus cuarteles, sin orden de arresto, con el solo propósito de tomarles fotografías con fines investigativos. Ello violaría la cláusula constitucional que prohíbe se prive a una persona de su libertad sin el debido proceso de ley (Art. II, Sec. 7); la que reconoce el derecho a protección contra ataques abusivos a la honra, a la reputación y a la vida privada y familiar de las personas (Art. II, Sec. 8); la que prohíbe arrestos y allanamientos, excepto por mandamiento judicial a base de una previa determinación de causa probable apoyada en juramento o afirmación (Art. II, Sec. 10); y la primerísima de las disposiciones de nuestra Carta de Derechos, relativa a la inviolabilidad de la dignidad del ser humano (Art. II, Sec. 1). Si esto se permitiese, en aras de la protección policíaca indudablemente necesaria, nos convertiríamos en un estado policial indudablemente repudiable.

Al igual que en *Crews*, en el caso ante nos la identificación del recurrido Rey Marrero, hecha en el acto del juicio, no fue el producto de su detención ilegal ni quedó maculada por el uso de la fotografía ilegalmente obtenida en el proceso identificatorio anterior al juicio. Es posible, como señalamos en *Pueblo* v. *Gómez Incera*, 97 D.P.R. 249, 253 (1969), que la identificación durante el proceso investigativo vicie de tal manera los derechos del acusado que no pueda defenderse de la identificación que de él se haga en el acto del juicio. Ello sucedería si esa identificación posterior es el producto de la sugestividad que hubiese permeado de invalidez la identificación en la etapa investigativa. Pero no siempre es ese el resultado, y por ello señalamos en *Gómez Incera*, pág. 257, que la determinación de si se ha violado el debido proceso de ley dependerá de la totalidad de las circunstancias que rodearen el procedimiento de identificación. Aquí, como en *Crews* y en

el mismo caso de *Gómez Incera,* las circunstancias determinantes de la identificación en el acto del juicio la ponen fuera del alcance de la doctrina del fruto del árbol venenoso.

Ciertamente, la identificación del recurrido por la testigo Nilka Mercado, quien dijo haberlo observado a través de un cristal durante tres segundos, sería insuficiente por sí sola para inculpar al recurrido. Pero su identificación por Luis Díaz Mercado, joven de quince años que precisamente mantenía una actitud vigilante por encomiendas de su padre, que ya tenía sospechas de los ocupantes del automóvil que merodeaba el establecimiento, y quien pudo observar al recurrido durante dos o tres minutos, en un sitio totalmente iluminado, y no bajo el efecto alarmante de un asalto y de un asesinato, sino antes de que esos hechos ocurrieran, es enteramente confiable, nada contiene de sugestividad, y en ninguna forma pudo ser manchada por la detención ilegal y ulterior procedimiento identificatorio de la policía. El fruto del árbol ya había madurado y estaba fuera del alcance de la toxina inyectada después, si se permite la paráfrasis de la cita de *Crews.* La identificación hecha por Díaz Mercado se conforma fielmente al análisis de los elementos de confiabilidad que expusimos en *Pueblo* v. *Peterson Pietersz,* 107 D.P.R. 172 (1978). Hubo (1) amplia oportunidad de observar, (2) buen grado de atención, (3) completa fidelidad, (4) nivel de certeza en la descripción del recurrido, y (5) el tiempo transcurrido entre su observación del recurrido y su confrontación con él fue razonablemente corto.

### III.

Aunque no se nos ha planteado, nos preocupa que el juicio en este caso haya tenido que interrumpirse cuando ya ha desfilado toda la prueba de cargo, con el consabido riesgo de que por el transcurso del tiempo—la resolución recurrida se produjo el 5 de febrero de 1980—se haya podido afectar el recuerdo de detalles importantes en los testimonios prestados y, aun peor, que puedan los miembros del jurado haber estado

expuestos a influencias indebidas. Esto se hubiese evitado si el planteamiento sobre inadmisibilidad de la prueba sobre identificación del recurrido se hubiese hecho oportunamente antes del juicio. Entendemos que se hizo tardíamente y debió desestimarse de plano por esa razón.

La Regla 234 de Procedimiento Criminal (¹) regula lo concerniente a la supresión de evidencia por un allanamiento o registro ilegal, y señala que:

"La moción se hará cinco días antes del juicio a menos que no hubiere oportunidad para ello o que al acusado no le constaren los fundamentos de la moción, o que la ilegalidad de la obtención de la evidencia surgiere de la prueba del fiscal."

■ Si bien dicha regla parece referirse más bien a prueba objetiva o material, el mismo principio debe regir si se trata de suprimir testimonio que de resultar inadmisible obligaría a la desestimación de los cargos y la absolución del acusado. La razón de la regla es tanto de economía de tiempo como de gastos. Es contrario a esa economía esperar al día del juicio para hacer una pausa en el mismo a los fines de

---

(¹) Dicha regla dispone:

"La persona agraviada por un allanamiento o registro ilegal podrá solicitar del tribunal al cual se refiere la regla anterior la supresión de cualquier evidencia obtenida en virtud de tal allanamiento o registro, o la devolución de la propiedad, por cualquiera de los siguientes fundamentos:

"(a) Que la propiedad fue ilegalmente ocupada sin orden de allanamiento o registro.

"(b) Que la orden de allanamiento o registro es insuficiente de su propia faz.

"(c) Que la propiedad ocupada o la persona o sitio registrado no corresponde a la descripción hecha en la orden de allanamiento o registro.

"(d) Que no había causa probable para creer en la existencia de los fundamentos en que se basó la orden de allanamiento o registro.

"(e) Que la orden de allanamiento fue librada o cumplimentada ilegalmente.

"(f) Que es insuficiente cualquier declaración jurada que sirvió de base a la expedición de la orden de allanamiento porque lo afirmado bajo juramento en la declaración es falso, total o parcialmente.

"El tribunal oirá prueba sobre cualquier cuestión de hecho necesaria para la resolución de la solicitud. De declararse con lugar la moción, la propiedad será devuelta, si no hubiere fundamento legal que lo impidiere, y no será admisible en evidencia en ningún juicio o vista. La moción se hará cinco días antes del juicio a menos que no hubiere oportunidad para ello o que al acusado no le constaren los fundamentos de la moción, o que la ilegalidad de la obtención de la evidencia surgiere de la prueba del fiscal."

dilucidar la cuestión colateral sobre admisibilidad de una prueba cuyo ofrecimiento en el juicio debió anticiparse. Véase *Pueblo* v. *Díaz Cintrón*, 91 D.P.R. 146, 149 (1964), y compárese, *Pueblo* v. *Nieves*, 67 D.P.R. 305, 307 (1947), y casos allí citados.

La Regla 234 reconoce tres excepciones a la norma de que la moción se presente por lo menos cinco días antes del juicio, a saber: (1) que no hubiere oportunidad para presentarla, o (2) que al acusado no le constaren los fundamentos de la moción, o (3) que la ilegalidad de la obtención de la prueba, es decir, su inadmisibilidad, surgiere de la prueba del fiscal. Ninguna de las excepciones está aquí presente.

El recurrido tuvo amplia oportunidad de solicitar la supresión de la prueba sobre identificación con antelación a la fecha señalada para el juicio. Los fundamentos de su petición le constaban cuando menos desde que se celebró la vista preliminar el 19 de octubre de 1979 y se determinó causa probable para fomularle acusaciones por los delitos de que ahora responde. Para dicha vista fueron citados los testigos Luis A. Díaz Mercado y Nilka Mercado, y es de presumirse que sobre la base de sus testimonios, únicos testigos oculares de los hechos delictivos imputádosle, se determinó causa probable. Se celebró acto de lectura de acusación el 15 de noviembre de 1979, señalándose el juicio para el 20 de diciembre, suspendiéndose a solicitud del recurrido, y haciéndose en nuevo señalamiento para el 23 de enero de 1980, fecha en que comenzó el juicio. En todas dichas ocasiones estuvo presente el recurrido, debidamente representado por abogado.

No es éste un caso en que la alegada ilegalidad de la prueba de identificación surgiera de la prueba del fiscal en el acto del juicio y que fuese entonces cuando se presentase la oportunidad al recurrido para cuestionarla. Para establecer que la prueba de identificación era inadmisible era necesario que el imputado aportara prueba de los hechos que la harían inadmisible. Por ello fue necesario hacer una pausa en el

juicio, retirar al jurado, y oírlo a él para que narrara el incidente de su detención en la pizería, su traslado a los cuarteles de policía, y la toma de su fotografía sin su consentimiento. Esto no surgió de la prueba de cargo.

Este juicio, que se inició el 23 de enero, se extendió por varios días en que se desinsaculó un jurado y declararon testigos de ambas partes y se ofreció prueba documental, hasta que el 5 de febrero hubo de paralizarse todos los procedimientos al producirse la resolución objeto del recurso que aquí consideramos. De haberse hecho el planteamiento sobre supresión de la prueba de identificación con antelación al juicio se hubiese economizado tiempo, gastos del proceso, molestias a testigos y jurados, y sobre todo la situación indeseable que en este momento prevalece en el caso.

■ Resolvemos que en circunstancias como las aquí presentes, la moción sobre supresión de prueba debe instarse por lo menos cinco días antes del juicio, al igual que la moción que al mismo efecto se contempla en la Regla 234 de Procedimiento Criminal.

*En mérito de los razonamientos expuestos en esta opinión, se expedirá el auto de certiorari solicitado por el Procurador General, se revocará la resolución recurrida y se ordenará que continúen los trámites ante el tribunal de instancia sin ulterior dilación ni interrupción a la mayor brevedad posible.*

El Juez Asociado Señor Dávila emitió una opinión particular.

—O—

Opinión particular del Juez Asociado Señor Dávila.

San Juan, Puerto Rico, a 30 de abril de 1980

No puedo dar mi conformidad a lo expresado en la opinión del Tribunal al efecto de que la identificación llevada a cabo al celebrarse el juicio es confiable. Como expresamos en *Pueblo* v. *Gómez Incera,* 97 D.P.R. 249, 253:

"... No se debe depender de la identificación que pueda hacer en corte el día del juicio. La identificación en el juicio estaría maculada por los vicios de que adoleció la llevada a cabo en la etapa investigativa. Ver *People* v. *Caruso*, supra; IV Wigmore, On Evidence, Sec. 1130 (ed. 1940). Los testigos ya habían determinado que el acusado era el responsable. La identificación durante el juicio resulta una mera formalidad. Como se expresó en el artículo escrito por Williams! and Hammelmann, *supra*, y que se cita en *Wade* a la pág. 229: 'La experiencia ha demostrado que una vez un testigo señala al acusado en la confrontación, no es de esperarse que se retracte más tarde, de tal manera que en la práctica la controversia de la identificación puede (en la ausencia de otra evidencia relevante) para todos los propósitos prácticos ser determinada en ese momento, antes del juicio . . .'."

Me he unido a la opinión del Tribunal porque según se expresa en la misma: "Pero su identificación por Luis Díaz Mercado, joven de quince años que precisamente mantenía una actitud vigilante por encomiendas de su padre, que ya tenía sospechas de los ocupantes del automóvil que merodeaba el establecimiento, y quien pudo observar al recurrido durante dos o tres minutos, en un sitio totalmente iluminado, y no bajo el efecto alarmante de un asalto y de un asesinato, sino antes de que esos hechos ocurrieran, es enteramente confiable, nada contiene de sugestividad, y en ninguna forma pudo ser manchada por la detención ilegal y ulterior procedimiento identificatorio de la policía."