# 2003 DTA 112

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL V DE PONCE Y AIBONITO**

PUEBLO DE PUERTO RICO
Recurrido

v.

DOMINGO RUIZ TORRES
Peticionario

Núm. KLCE-03-00388

RECEIVED

OCT 2 7 2003

SERIALS DEPT.
HARVARD LAW SCHOOL LIBRARY

San Juan, Puerto Rico, a 2 de julio de 2003

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Aponte Hernández y la Juez Pabón Charneco

Pabón Charneco, Jueza Ponente

## TEXTO COMPLETO DE LA RESOLUCION

Comparece ante nos Domingo Ruiz Torres, en adelante, el peticionario, solicitando que revoquemos una Resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante dicho dictamen, el tribunal *a quo* denegó una *"Moción de Supresión de Evidencia"* presentada por el peticionario.

Por las razones que expondremos a continuación, se deniega el auto solicitado.

### I

Conforme surge del recurso ante nuestra consideración, por hechos acaecidos el 8 de abril de 2000, se presentaron denuncias contra el peticionario por infracción al Art. 258 del Código Penal de Puerto Rico, 33 L.P.R.A. 4493 ██ y las Secs. 3-109, ██ 5-801, ██ 6-203B ██ y 2-801 ██ de la Ley Núm. 141 de 20 de julio de 1960, según enmendada, conocida como *"Ley de Vehículos y Tránsito de Puerto Rico"*. ██ Se determinó causa probable por los cargos presentados, señalándose el juicio por la infracción a la Sec. 5-801 de la Ley Núm. 140, *supra*, para el 16 de mayo de 2000.

Así las cosas, y luego de varios incidentes procesales que incluyeron el descubrimiento de prueba al amparo de la Regla 95 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, Regla 95, el 20 de septiembre de 2002, el peticionario presentó escrito intitulado *"Moción de Supresión de Evidencia"*. Posteriormente, el 18 de octubre de 2003, presentó una *"Moción de Supresión de Evidencia Enmendada"*. Adujo que la evidencia en poder del Ministerio Público, a saber, el resultado de la prueba de alcohol realizada, había sido obtenida *"utilizando fuerza bruta en una clara violación del derecho del peticionario a negarse a someterse a cualquier prueba o a escoger la prueba de sangre"*. En su consecuencia, alegó que la prueba era producto de un arresto ilegal por parte de los agentes, ya que no existían motivos fundados para arrestar y proceder a realizarle la prueba de alcohol al peticionario.

El 30 de enero de 2003, el Ministerio Público presentó oposición a dicho escrito. Arguyó que la prueba había sido realizada conforme a la ley y al derecho. Sostuvo que, luego de intentar dilatar el proceso de investigación, el peticionario había consentido a la prueba de aliento, por lo que se había tratado de un registro consentido.

La vista fue señalada para el 6 de febrero de 2003. Llegada esa fecha, y escuchada la prueba, el Tribunal de Primera Instancia denegó el escrito presentado por el peticionario.

Inconforme con dicha determinación, el peticionario acude a este Tribunal. El 10 de abril de 2003, ordenamos al Estado se expresara sobre el recurso incoado. Posteriormente, y en auxilio de nuestra jurisdicción, paralizamos los procedimientos ante el Tribunal de Primera Instancia. Habiendo cumplido el Procurador General, en representación de El Pueblo de Puerto Rico, con nuestra Orden, procedemos a resolver.

### II

En su escrito, el peticionario alega que incidió el Tribunal de Primera Instancia al denegar la *"Moción de*

*Supresión de Evidencia*" presentada.

### III

De ordinario, se prohíbe arrestar a una persona sin previa orden judicial fundada en una determinación de causa probable. No obstante, la Regla 11(a) de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 11, dispone que es válido un arresto sin orden judicial por un funcionario público cuando éste tuviere motivos fundados para creer que la persona a ser arrestada ha cometido un delito en su presencia. La garantía constitucional citada se extiende a intervenciones con vehículos de motor. *Pueblo v. Camilo Meléndez*, 148 D.P.R. 539 (1999); *Pueblo v. Yip Berríos*, 142 D.P.R. 386, 399 (1997); *Pueblo v. Cruz Torres*, 137 D.P.R. 42, 48-49 (1994).

El Tribunal Supremo de Puerto Rico ha señalado que la frase "*motivos fundados*" es sinónima de la de "*causa probable*" que contiene el Art. II, Sec. 10 de la Constitución de Puerto Rico. *Pueblo v. Ruiz Bosch*, 127 D.P.R. 762 (1991). La "*causa probable*" se determina a base de criterios de probabilidad y razonabilidad, y es doctrina firmemente establecida en nuestra jurisdicción que esa determinación tiene que basarse en hechos y no en meras sospechas. *Id.; Pueblo v. Rey Marrero*, 109 D.P.R. 739 (1981).

A tales efectos, el concepto de motivos fundados se ha definido como aquella información y conocimiento que lleven a una persona ordinaria y prudente a creer que el arrestado ha cometido un delito, independientemente de que luego se establezca o no la comisión del delito, razón por la cual se hace necesaria la evaluación de las circunstancias específicas de cada caso en particular. *Pueblo v. Ruiz Bosch*, 127 D.P.R. 762 (1991); *Pueblo v. Martínez Torres*, 120 D.P.R. 496, 504 (1988).

La existencia de motivos fundados para el arresto es el resultado de una rápida evaluación de circunstancias, en la cual el agente de la Policía llega a la conclusión de que la persona ha cometido un delito en su presencia. Chiesa, Ernesto. *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Ed. Forum, Vol. 1, Colombia (1991). Asimismo, la apreciación del agente no se limita a lo que puedan captar sus sentidos, sino que se toma en consideración su experiencia. *Pueblo v. Cabrera*, 92 D.P.R. 70 (1965).

Motivos fundados existen cuando el agente personalmente observa una actuación que es delictiva. *Pueblo v. Colón Bernier*, 148 D.P.R. 135 (1999). Ahora bien, tener meras sospechas no basta, aunque tampoco es necesario convencer al juez, fuera de toda duda razonable, de que se está violando la ley, ni establecer que la ofensa imputada fue cometida en realidad. Fundamental es que el agente que efectúa el arresto y allanamiento sin orden tenga -al momento de hacerlo-, base razonable o motivos fundados para creer que se estaba violando la ley. *Pueblo v. Serrano, Serra*, 148 D.P.R. 173 (1999).

El mecanismo procesal para solicitar la supresión o exclusión de evidencia ilegalmente ocupada es el provisto por la Regla 234 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 234. *Pueblo v. Cruz Calderón*, *supra*; *Pueblo v. Blase Vázquez*, 148 D.P.R. 618 (1999). Dicha regla procesal dispone:

*"La persona agraviada por un allanamiento o registro ilegal podrá solicitar del tribunal al cual se refiere la Regla 233 la supresión de cualquier evidencia obtenida en virtud de tal allanamiento o registro, o la devolución de la propiedad, por cualquiera de los siguientes fundamentos:*

*Que la propiedad fue ilegalmente ocupada sin orden de allanamiento o registro.*

*Que la orden de allanamiento o registro es insuficiente de su propia faz.*

*Que la propiedad ocupada o la persona o sitio registrado no corresponde a la descripción hecha en la orden de allanamiento o registro.*

*Que no había causa probable para creer en la existencia de los fundamentos en que se basó la orden de allanamiento o registro.*

*Que la orden de allanamiento fue librada o cumplimentada ilegalmente.*

*Que es insuficiente cualquier declaración jurada que sirvió de base a la expedición de la orden de allanamiento porque lo afirmado bajo juramento en la declaración es falso, total o parcialmente."*

Dicho precepto autoriza la presentación de una moción de supresión de evidencia, la cual debe expresar los hechos precisos o las razones específicas que sostengan el fundamento o fundamentos en que se basa la misma. *Pueblo v. Echevarría Arroyo*, 156 D.P.R. ___ (2002), **2002 J.T.S. 84**; *Pueblo v. Maldonado Rosa*, 135 D.P.R. 563 (1994).

El propósito de la Regla 234, *supra*, es: (1) proveer un remedio efectivo a la víctima del registro y allanamiento irrazonable e ilegal; (2) evitar que el gobierno se beneficie de sus propios actos ilegales; (3) preservar la integridad del tribunal; y (4) disuadir a los oficiales del orden público a que en el futuro no repitan las acciones objeto de la impugnación. Chiesa Aponte, Ernesto, *Derecho Procesal Penal de Puerto Rico y Estados Unidos, supra.*

De acuerdo al procedimiento establecido por dicha Regla, el tribunal oirá prueba sobre cualquier cuestión de hecho necesaria para adjudicar la moción, y goza de facultad para adjudicar la credibilidad de los testimonios vertidos para sostener y/o impugnar el registro. *Pueblo v. Bonilla Romero*, 120 D.P.R. 92, 110 (1987).

**IV**

Por otro lado, la Sec. 5-803(b) de la derogada Ley Núm. 140, ██ *supra*, establecía que cualquier agente del orden público debería requerir de cualquier conductor que se sometiera a cualesquiera de los análisis químicos establecidos después de haberle detenido y arrestado si tenía motivos fundados para creer que dicha persona conducía o hacía funcionar un vehículo bajo los efectos de bebidas embriagantes, o cuando había sido detenido por razón de una posible infracción a la ley o a las leyes de servicio público y sus reglamentos, existieren motivos fundados para creer que conducía o hacía funcionar un vehículo bajo los efectos de bebidas embriagantes al tiempo de su detención.

A su vez, dicha disposición establecía en su inciso (a) que *"toda persona autorizada para conducir vehículos de motor habrá prestado su consentimiento a someterse a un análisis químico de su sangre, aliento o de cualquier sustancia de su cuerpo, excepto la orina, para los fines que se expresan en este artículo, así como a una prueba inicial del aliento a ser practicada en el lugar de la detención por el agente·del orden público".* Dicho inciso disponía, a su vez, que se entenderá que dicho consentimiento queda prestado para cualesquiera de los análisis estatuidos y que la persona que fuere requerida se sometería al análisis de su selección.

**V**

En su escrito, el peticionario, escuetamente, nos plantea que incidió el tribunal *a quo* al no suprimir la evidencia obtenida mediante la prueba de alcohol utilizando el Intoxilizer 5000, al ser la misma administrada al peticionario mediante el uso de violencia e intimidación. Argumenta que se negó en dos (2) ocasiones, conforme la prueba desfilada, a realizarse de forma voluntaria la prueba de alcohol mediante los métodos dispuestos en ley.

Comencemos señalando que surge del Acta que en la vista de supresión de evidencia testificó el Agente que intervino en el caso, así como la compañera consensual del peticionario. Durante este proceso el Tribunal de Primera Instancia participó activamente. Sin embargo, el peticionario no somete una exposición narrativa de la prueba o transcripción de la prueba. Aún más, ni tan siquiera nos provee un resumen de los testimonios vertidos

en la vista celebrada. Ante estas circunstancias, pretende que resolvamos descansando meramente en su apreciación y en la Hoja de Información de la Policía. ■

Por su parte, y sobre lo ocurrido en la vista de supresión de evidencia, el Procurador General en su escrito nos señala que el Agente José A. Ramírez, quien intervino con el peticionario el día de los hechos, declaró que le hizo a éste, luego que consintiera, la prueba de aliento inicial *"Alcohol Sensor"*, la cual arrojó un resultado de .19% de alcohol. Posteriormente, se le hizo la prueba de alcohol, mediando el consentimiento del peticionario, utilizando el *"Intoxilyzer 5000"*. Dicha prueba arrojó un resultado de .151%. ■

La defensa contrainterrogó al Agente y presentó como testigo a la compañera consensual del peticionario, a quien mostró dos (2) fotos a color tomadas por ésta. Estas fueron admitidas en evidencia, no obstante la objeción del Ministerio Público. Ante la prueba presentada el Tribunal de Primera Instancia emitió el dictamen recurrido, denegando la solicitud presentada por el peticionario.

De la Hoja de Continuación de la Policía de Puerto Rico, suscrita por el Agente José A. Ramírez, se desprende que, en el caso de autos, el agente del orden público intervino con el peticionario por varias infracciones a la Ley Núm. 140, *supra*.

Por otro lado, y conforme señala el Procurador General en su escrito, el Agente José A. Ramírez testificó que estaba dando patrullaje preventivo junto al Agente Luis Maurosa por la Carr. Núm. 2. Frente a su patrulla iba un vehículo oscuro dando *"zigzags"* y sin suficiente iluminación en su tablilla. Procedió a detener al peticionario, frente al Hospital de Damas. Le pidió la licencia de conducir y se percató de que éste expedía olor a alcohol, ojos rojizos, estaba sudando y tenía lengua pesada. Declaró que desde que estaba interviniendo con el peticionario éste se mostraba altanero y agresivo y su compañera le decía que se calmara. Atestó que le hicieron, con el consentimiento del peticionario, la prueba de alcohol *"Alcohol Sensor"*, la cual arrojó un resultado de .19%. Testificó que se le hicieron las advertencias de ley y le pusieron las esposas. Se le indicó al peticionario cuál de las pruebas deseaba realizarse, indicando éste que la del aliento. Declaró el agente que caminó hacia la unidad móvil donde estaba el *"Intoxilyzer 5000"*. Atestó que el peticionario le señaló que deseaba hacerse la prueba de sangre y que lo llevaran al Hospital Pila. El agente accedió, pero le indicó al peticionario que lo llevaría al Hospital San Lucas a buscar los tubos de sangre. Testificó que el peticionario comenzó a dar patadas dentro de la patrulla y a decir que querían *"joderlo"*, por lo que el Agente Maurosa tuvo que detener la patrulla para tratar de controlar al peticionario. Declaró que al lograr sacar al peticionario de la patrulla, éste salió a la carretera y se resbaló. De inmediato, el agente lo movió al área verde del centro de la carretera, llegando en ese momento otros agentes. El peticionario continuaba agresivo y diciéndoles palabras soeces. Declaró el agente que cuando lograron tranquilizar al peticionario, éste expresó que deseaba hacerse la prueba de aliento, la cual se hizo en la unidad móvil.

En el contrainterrogatorio, el Agente Ramírez negó que se agrediera al peticionario intencionalmente. Atestó que era posible que en el forcejeo dentro y fuera de la patrulla haya recibido heridas leves. El agente negó que las heridas que surgen en la fotografía fueran consecuencia de la intervención, ya que en la vista de causa para arresto, cinco (5) días después de los hechos, el peticionario no tenía ninguna de las heridas que presentaban las fotos. La testigo de la defensa, la compañera consensual del peticionario, declaró que lo vio agolpeado siendo confrontada por las fotos que ella le tomó al peticionario y que alegadamente mostraban los golpes sufridos.

Evaluado lo anterior, el peticionario estaba conduciendo el vehículo de motor en abierta violación a las leyes de tránsito. Al analizar si existían motivos fundados para requerir que el peticionario se sometiera a la prueba de alcohol inicial, el Tribunal de Primera Instancia tenía que examinar las circunstancias específicas de la situación presentada a fin de determinar si los agentes del orden público actuaron como personas ordinarias y prudentes. Examinados tales hechos, podemos concluir que, efectivamente, los agentes podían razonablemente

creer que el apelante se encontraba bajo los efectos de bebidas embriagantes. Veamos.

Una vez detenido y observado el comportamiento del apelante, el agente testificó que éste expedía olor a alcohol, tenía los ojos rojizos, la piel sudorosa y la lengua pesada. De conformidad, pues, con lo antes señalado, no tenemos duda que los agentes del orden público que intervinieron con el peticionario tenían motivos fundados para creer que éste estaba conduciendo el vehículo de motor bajo los efectos de bebidas embriagantes. Bajo esta premisa procedía requerirle que se efectuase la prueba de aliento, conforme se realizó. Concurrimos con el Procurador General en que el hecho de que el peticionario se tornase violento y agresivo como consecuencia de su estado, no puede considerarse como un retiro o revocación del consentimiento que prestó al transitar un vehículo de motor por nuestras vías públicas.

El peticionario consintió en realizarse la prueba de alcohol inicial. Luego de hacerle las advertencias optó porque se le practicase la prueba de sangre. Lo anterior se desprende de la Hoja de Información de la Policía. Cuando lo trasladan al hospital a hacerse la prueba, el peticionario se mostró agresivo negándose a la toma. Posteriormente, accedió a la prueba de alcohol *"Intoxilizer 5000"* conforme surge de la Hoja de Información. Ante estas circunstancias, no incidió el tribunal *a quo* al denegar la solicitud realizada.

Por último, como es sabido, cuando un peticionario opta por impugnar un dictamen producido, después de que el foro recurrido haya escuchado y aquilatado prueba testifical, la norma imperante en Puerto Rico es que los tribunales apelativos no intervendrán con la apreciación y adjudicación de credibilidad que, en relación con la prueba testifical, haya realizado el juzgador de los hechos a nivel de instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. En ausencia de esa demostración, la determinación a que llegue el foro recurrido será merecedora de gran deferencia por parte del tribunal apelativo, por cuanto el juzgador en instancia es quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos. *Pueblo v. Bonilla Romero, supra*, a la pág. 111; *Pueblo v. Cabán Torres*, 117 D.P.R. 645, 654 (1986).

En el presente caso, no existe razón alguna para que intervengamos con la adjudicación de credibilidad que le mereció la prueba testifical al juzgador. El Tribunal de Primera Instancia le concedió entera credibilidad al testimonio del agente que intervino con el peticionario con relación a la forma y manera en que se suscitó la intervención y se realizaron las pruebas de aliento.

## VI

Por los fundamentos expuestos, se deniega la expedición del auto solicitado.

Así lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2003 DTA 112

1. Este artículo tipifica como delito la resistencia u obstrucción a la autoridad pública. (Delito menos grave)

2. Este artículo tipifica como delito conducir un vehículo de motor con licencia vencida. (Delito menos grave)

3. Este artículo tipifica como delito conducir un vehículo de motor bajo los efectos de bebidas embriagantes con .151% de alcohol en la sangre. (Delito grave)

4. Este artículo tipifica como falta administrativa conducir un vehículo de motor desprovisto de luz de la tablilla posterior.

**5.** Este artículo tipifica como falta administrativa conducir un vehículo de motor desprovisto del distintivo del año fiscal en curso.

**6.** Estatuto vigente al momento de los hechos.

**7.** La mencionada Ley Núm. 140 fue derogada por la Ley Núm. 22 de 7 de enero de 2000 cuya fecha de efectividad es 7 de enero de 2001.

**8.** En el caso de autos, surge de la Hoja de Continuación de la Policía de Puerto Rico:

*"Se arrestó al Sr. Domingo Ruiz Torres [el peticionario] porque el día 8 Abril 2000, a eso de las 8:00 P/M., mientras conducía el vehículo de motor, Marca chevrolet, Modelo Nova, del año 1979 y con tablilla 98X356 por la carretera #2, en dirección de Este a Oeste y por el carril central, Al llegar frente al Hospital Damas Jurisdicción de Ponce. Este lo hacía dando varios zig-zag no manteniéndose dentro de su carril. Además dicho vehículo estaba carente de alumbrado en la tablilla y la misma se encontraba ilegible, lo que dio motivo a que éste fuera detenido y entrevistado; donde me pude percatar de que éste conducía bajo los efectos de bebidas alcohólicas, ya que éste expedía un fuerte olor a licor, tenía los ojos rojizos, pesada la lengua, rostro sudoroso. AL requerirle que se desmontara del vehículo, éste se tambaleaba un poco. Al solicitarle la licencia de conducir, esté [sic] se encontraba molesto donde [sic] su señora esposa le indicó que se tranquilizara y no se alterará [sic] y que no se pusiera agresivo. Se le leyeron las advertencias al conducir bajo los efectos de bebidas embriagantes; optando éste libre y voluntariamente al análisis de aliento. A éste se le sometió un registro de seguridad según lo indica directrice [sic] de la policía Agte. José A. Ramírez López 22603 de Puerto Rico poniéndose esté [sic] altanero y grosero. indicando [sic] que yo era pillo y corrupto, cuando nos dirijiamos [sic] hacía la Unidad Móvil éste indicó que no perdiera el tiempo en realizar el análisis de aliento y si no que lo llevará a sacarse la sangre. Pasamos [sic] a la División de Tránsito ponce [sic]. Este comunicó que tampoco se iba a tomar la muestra de sangre. que [sic] se negaba rotundamente a cualquier análisis.... Este voluntariamente obstruyo [sic] y demoró la Justicia y las gestiones de este funcionario consistente en que este señor bajo un arebato [sic] de colera [sic] comenzó a la lanzar "patadas" contra el equipo de radar, contra el cristal delantero y retrovisor interior...Lo que provoco [sic] que el Agente Louis Maurosa 17239 conductor del vehículo oficial tuviera que frenar de súbito, saliendose [sic] hacia el aréa [sic] verde para evitar ser agredido por el arrestado. Mientras, éste seguia [sic] lanzando patadas y lanzando improperios en el interior del vehículo contra la Policía de Puerto Rico. Logramos sacar al individuo fuera del vehículo donde éste comenzo [sic] nuevamente con su actitud agresiva y hostil. Comenzando éste nuevamente a forsejear [sic] con ambos agentes donde éste se lanzo [sic] a la via de rodaje en busca que un vehículo lo arollará [sic] por lo cual [sic] tuvimos que sacarlo mediante la fuerza de la vía de rodaje ocasionandose [sic] éste varios hematomas y laceraciones en su cuerpo. Logramos controlar al individuo. Pasamos a la unidad móvil donde éste dio un cambio a su actitud decidiendo entonce [sic] libre y voluntariamente sometiendose [sic] al analisis [sic] de aliento realizado por este suscribiente arrojando .151% de volumen de alcohol en la sangre atraves [sic] del aliento en la maquina [sic] Intoxilyzer 5000. Además conducía con la licencia de conducir vencida desde 5 de noviembre 1999."*

**9.** Se presentó en evidencia copia de la licencia de operador de *"Intoxilyzer 5000"* y *"Alcohol Sensor"*, copia del análisis de aliento *"Intoxilyzer 5000"* y copia de la lista de cotejo operacional *"Intoxilyzer 5000"*. El peticionario estipuló la prueba documental, pero no su contenido.