El Juez Presidente Señor Hernández Denton
emitió la opinión del Tribunal.
La presente controversia está íntimamente relacionada con la política pública contra los conductores ebrios y la manera en que el Estado puede probar dicha conducta ante los tribunales. Al resolver el caso de autos, somos conscien-tes de la seriedad de este problema y de la necesidad de actuar decididamente en contra de aquellos que in- *937 curren en esta conducta antisocial. No obstante, no pode-mos perder de perspectiva que nuestros tribunales están obligados a garantizar un proceso justo e imparcial para todo acusado, sin importar el delito imputado y cuán censurable haya sido su conducta. Para ello, es necesario que el Estado pruebe su caso más allá de duda razonable y cumpla con todas las normas sustantivas y procesales apli-cables, garantizadas por el debido proceso de ley.
Con ello en mente, debemos resolver si el resultado de una prueba de aliento para detectar el nivel de alcohol en la sangre de una persona sospechosa de conducir en estado de embriaguez es admisible como evidencia, arm cuando no se haya cumplido con el requisito reglamentario de obser-var al detenido por veinte minutos antes de realizarla. Ello con el propósito de asegurar que no haya restos de alcohol en la boca del sospechoso que pudiera afectar la corrección de la prueba.
Tras un sosegado y profundo análisis de la controversia planteada, concluimos que tanto la Ley de Vehículos y Tránsito como las Reglas de Evidencia aplicables a la ad-misión de prueba científica requieren que el Estado de-muestre que cumplió sustancialmente con el periodo de ob-servación antes de que se admita como evidencia el resultado de una prueba de aliento. De esta forma, aun cuando rechazamos establecer una regla de exclusión au-tomática ante incumplimientos con dicho requisito, resol-vemos que el tribunal debe examinar —caso a caso— el efecto del incumplimiento sobre la confiabilidad y precisión de la prueba de acuerdo con los criterios enumerados en la Regla 19 de Evidencia, con el objetivo de determinar si se ha visto afectado su valor probatorio y, por lo tanto, debe ser rechazada. Al aplicar la normativa expuesta anterior-mente, confirmamos el dictamen recurrido.
*938 I
El Ministerio Público presentó acusaciones criminales en contra del Sr. Gary Montalvo Petrovich por dos cargos de homicidio negligente en su modalidad grave, en confor-midad con el Art. 109 del Código Penal de Puerto Rico, 33 L.P.R.A. see. 4737. Además, al señor Montalvo Petrovich se le imputó un cargo por manejar un vehículo de motor bajo los efectos de bebidas embriagantes y otro por causar grave daño corporal a un ser humano, según disponen los Arts. 7.02 y 7.06 de la Ley de Vehículos y Tránsito de Puerto Rico (Ley de Vehículos y Tránsito), Ley Núm. 22 de 7 de enero de 2000 (9 L.P.R.A. sees. 5202 y 5206.) Todas las acusacio-nes están relacionadas a unos lamentables incidentes ocu-rridos en el Municipio de Toa Baja el 15 de enero de 2006.
Según surge de las determinaciones hechas por el foro de instancia, aproximadamente a las 3:45 a.m. varias per-sonas que conducían sus respectivas motoras por el Ex-preso Núm. 22 que conduce de San Juan a Arecibo fueron impactadas por el automóvil conducido por el señor Mon-talvo Petrovich. Como resultado de este accidente, dos per-sonas perdieron la vida y una resultó gravemente herida. A eso de las 4:00 a.m. el Cuartel de la Policía de Buchanan fue informado sobre el accidente, por lo que los agentes Jorge L. García Milán, Melvin Méndez Vázquez y el supervisor de turno, Carmelo Díaz, se dirigieron al lugar de los hechos, al cual llegaron a las 4:10 a.m. Una vez en el lugar, los agentes procedieron a controlar el tránsito y proteger la escena, bloqueando dos carriles de la autopista con sus ve-hículos oficiales.
Mientras inspeccionaban la escena del accidente, los agentes Díaz y García Milán caminaron una distancia aproximada de cuatrocientos a quinientos pies hasta llegar al vehículo del señor Montalvo Petrovich.(1) Este se encon- *939 traba a poca distancia fuera del vehículo y su esposa per-manecía en el interior. Según determinó el Tribunal de Pri-mera Instancia, ambos agentes llegaron hasta donde se encontraba el señor Montalvo Petrovich a eso de las 4:20 a.m. Los agentes le preguntaron al señor Montalvo Petro-vich si él era el conductor del vehículo, y éste contestó afirmativamente. Acto seguido, le solicitaron que les mos-trara su licencia de conducir y la licencia del vehículo. Se-gún el testimonio del agente Carmelo Díaz, el señor Mon-talvo Petrovich caminaba y se expresaba adecuadamente y se mostró cooperador en todo momento. Una vez el señor Montalvo Petrovich entregó los documentos solicitados, dicho agente alegó que percibió olor a alcohol. En ese ins-tante, los agentes le preguntaron qué había ocurrido y éste, voluntariamente, les manifestó que estaba en una fiesta en Vega Baja y que había consumido varias copas de vino.
Como resultado de lo anterior, el agente Díaz se comu-nicó con el agente Melvin Soto Cabán al Cuartel de la Po-licía en Buchanan para que se personara a la escena, pu-siera bajo arresto al señor Montalvo Petrovich y le realizara una prueba de aliento. A eso de las 4:22 a.m., el agente Soto Cabán llegó a la escena, arrestó al señor Mon-talvo Petrovich y lo condujo al Cuartel de la Policía en Buchanan. Allí le practicó la prueba de aliento con el ins-trumento conocido como Intoxylizer 5000.(2) La referida prueba comenzó a las 4:35 a.m. y a las 4:37 a.m. la máquina arrojó un resultado de .088 por ciento de alcohol, lo que equivale a ocho centésimas del uno porciento de alcohol en la sangre, que es el mínimo prohibido por ley.
Luego de presentadas las denuncias contra el señor Montalvo Petrovich, se encontró causa probable para arresto y posteriormente causa probable para acusar en todos los cargos presentados, conforme a las Reglas 6 y *940 24(c) de Procedimiento Criminal, respectivamente, 34 L.P.R.A. Ap. II. Como resultado de lo anterior, se presenta-ron sendas acusaciones contra el señor Montalvo Petrovich y el juicio en su fondo quedó pautado para el 1 de octubre de 2007.
Oportunamente, la defensa del señor Montalvo Petro-vich presentó una Moción Solicitando Supresión de Evi-dencia Científica In Limine. En la referida moción, solicitó que se suprimiera el resultado de la prueba de aliento, ya que no se esperaron los veinte minutos requeridos por el Art. 8.14 del Reglamento Núm. 6346 de 14 de septiembre de 2001 del Departamento de Salud (Reglamento 6346), que regula la toma de pruebas científicas para determinar la concentración de alcohol y otras sustancias en la sangre. Según la defensa, el incumplimiento con dicho requisito afectaba directamente la confiabilidad y admisibilidad de la prueba de aliento que se le tomó al señor Montalvo Petrovich. En su comparecencia, éste sostuvo que el requi-sito de veinte minutos es de cumplimiento absoluto, por lo que su incumplimiento acarrea una total falta de confiabilidad. Por ello, le solicitó al foro de instancia que suprimiera la evidencia según la Regla 234 de Procedi-miento Criminal, 34 L.P.R.A. Ap. II.
El Ministerio Público, por su parte, se opuso a la solici-tud de supresión y le solicitó al tribunal que obviara el contenido del informe preparado por el agente García Mi-lán el mismo día del accidente. En su lugar, solicitó que se aceptara la nueva versión sobre los horarios y la secuencia de eventos presentada en los testimonios de los agentes durante la vista celebrada un año y ocho meses luego del accidente. El foro de instancia rechazó dicha solicitud por varias razones.
En primer lugar, el tribunal hizo referencia a la denun-cia, la cual, según el agente García Milán, fue preparada por la propia fiscalía. Los horarios indicados en la denun-cia y el informe policiaco coinciden en que el accidente ocu- *941 rrió a las 3:45 a.m. y que la Policía fue notificada a las 4:00 a.m. Además, ambos documentos establecen que los prime-ros agentes llegaron a la escena del accidente a eso de las 4:10 a.m. y que llegaron hasta donde se encontraba el señor Montalvo Petrovich a las 4:20 A.M.
A pesar de lo anterior, los agentes que testificaron en la vista hicieron declaraciones incompatibles sobre los referi-dos horarios. Por ejemplo, el agente García Milán declaró que se le informó del accidente a las 3:45 a.m. Ello a pesar de que en el informe indicó que la notificación ocurrió a las 4:00 a.m. y que en una declaración jurada prestada en sep-tiembre de 2006 hizo mención de las 3:45 a.m. para refe-rirse a la hora en que ocurrió el accidente y no cuándo se le notificó. Por su parte, el agente Díaz también se contradijo al declarar que tardó de cinco a siete minutos en llegar a la escena del accidente, mientras que en el informe indicó que tardó diez minutos en llegar desde que fue notificado.
No obstante, el tribunal consideró que esa diferencia de tres a cinco minutos en nada afectaba el hecho del incum-plimiento ya que, a preguntas de la defensa, el agente Díaz reiteró que llegó hasta donde se encontraba el acusado a las 4:20 a.m., tal y como se indicó en el informe. Según su testimonio, luego de llegar a la escena —a eso de las 4:10 a.m.— los agentes procedieron a controlar el tránsito, lo que les tomó de cinco a siete minutos y, posteriormente, caminaron aproximadamente cuatrocientos a quinientos pies antes de llegar hasta donde se encontraba el señor Montalvo Petrovich. Es evidente que sólo transcurrieron quince minutos desde que los agentes intervinieron con el señor Montalvo Petrovich a las 4:20 a.m. hasta que le rea-lizaron la prueba de aliento a las 4:35 a.m.(3)
*942 Acerca de las incongruencias entre las declaraciones presentadas por los agentes durante la vista y lo que éstos indicaron en el informe policiaco, el tribunal expresó que le merecía más credibilidad el informe por haber sido prepa-rado inmediatamente después del accidente. Ello, según el foro primario, asegura un mejor recuerdo de lo sucedido y hace menos probable la alteración intencional de los deta-lles del caso, ya que la pertinencia de la hora no estaba en la mente de ninguno de los agentes al momento de prepararlo.
De igual forma, el tribunal resaltó que el informe fue redactado el día del accidente por el agente García Milán. Sobre éste, destacó que es un agente con veintinueve años de experiencia en la Policía de Puerto Rico, todos en la División de Tránsito. Además, el foro de instancia adujo que el referido informe fue suscrito seis días más tarde por el supervisor de García Milán, el agente Díaz, a quien tam-bién describió como un agente con vasta experiencia en la Policía y que estuvo presente en la escena del accidente. De esta forma, fueron dos los agentes que certificaron los ho-rarios en que la Policía fue notificada del accidente y la hora en que los agentes llegaron a la escena e intervinieron con el acusado.
Luego de celebrada la vista, el Tribunal de Primera Ins-tancia emitió una Resolución en la cual ordenó la supre-sión del resultado de la prueba de aliento. Dicho foro fun-damentó su determinación en las incongruencias entre los testimonios de los agentes que testificaron durante la vista de supresión y el informe policiaco preparado el día del accidente. Tras aquilatar la prueba testifical, el tribunal rechazó parte de los testimonios ofrecidos en la vista por considerar que mediante éstos los agentes intentaron cam-biar la hora de llegada para acomodar el horario y así cum- *943 plir con los veinte minutos reglamentarios. Como conse-cuencia, el tribunal descansó en el informe policiaco y concluyó que el periodo de observación fue sólo de trece minutos, por lo que no se cumplió con el requisito de obser-vación durante un mínimo de veinte minutos antes de rea-lizar la prueba de aliento, según lo dispuesto en el Regla-mento 6346.
Inconforme con la determinación del foro primario, el Ministerio Público recurrió al Tribunal de Apelaciones y argumentó que no procedía la supresión de la prueba de aliento en una vista sobre supresión de evidencia al am-paro de la Regla 234 de Procedimiento Criminal, supra. Según el Ministerio Público, un requisito reglamentario, a lo sumo, afecta el valor probatorio del resultado de la prueba y su incumplimiento no debe ser fundamento para decretar la supresión automática. No obstante lo anterior, el foro apelativo confirmó la determinación del tribunal de instancia. En particular determinó que, tratándose de prueba científica, el foro primario podía evaluar la prueba de aliento en conformidad con los criterios establecidos en la Regla 19 de Evidencia, 32 L.P.R.A. Ap. IV, y decretar su inadmisibilidad.
Aún inconforme, el Ministerio Público acude ante nos representado por el Procurador General. En su compare-cencia, sostiene que la solicitud de supresión presentada por la defensa al amparo de la citada Regla 234 de Proce-dimiento Criminal era improcedente, ya que dicha regla busca instrumentar la protección constitucional en contra de registros y allanamientos irrazonables. Además, arguye que aun si se determinara que los agentes no cumplieron con el requisito de observación de veinte minutos dispuesto en el Reglamento 6346, dicho incumplimiento reglamenta-rio sólo afecta el valor probatorio de la prueba de aliento y no su admisibilidad.
Examinado el recurso, expedimos el auto solicitado. Con el beneficio de la comparecencia de ambas partes, procede-mos a resolver.
*944 II
Consciente de los peligros que representa para nuestra sociedad la práctica de conducir en estado de embriaguez o bajo los efectos de sustancias controladas, la Asamblea Legislativa aprobó la Ley Núm. 132 de 3 de junio de 2004 para introducir varias enmiendas a la Ley de Vehículos y Tránsito. Véase Pueblo v. Figueroa Pomoles, 172 D.P.R. 403 (2007). De esta forma, la Asamblea Legislativa reafirmó claramente la política pública a favor de la seguridad pública y se unió a un movimiento mundial para evitar las muertes en las carreteras ocasionadas por conductores en estado de embriaguez. Pueblo v. Figueroa Pomales, supra.
En conformidad con los objetivos enunciados, el citado Art. 7.02 de la Ley de Vehículos y Tránsito incorporó el lenguaje de “ilegal per se” para establecer concretamente la ilegalidad del acto de conducir un vehículo de motor cuando el contenido de alcohol en la sangre del conductor es de 0.08% o más, según surja tal nivel o concentración del análisis químico o físico de su sangre, o de su aliento. 9 L.P.R.A. sec. 5202. Véase, además, Pueblo v. Figueroa Pomales, supra.(4) Como consecuencia de ello, el nivel o concentración de alcohol en la sangre no es meramente un elemento probatorio, sino que representa una norma de que determinado porciento de alcohol en la sangre es suficiente para concluir que la persona se encuentra, efectivamente, bajo los efectos del alcohol en violación de la Ley *945 de Vehículos y Tránsito. Pueblo v. Figueroa Pomales, supra. (5)
Por otra parte, el Art. 7.09(g) de la Ley de Vehículos y Tránsito, 9 L.P.R.A. sec. 5209(g) —en lo pertinente— le ordena al Departamento de Salud que adopte y reglamente el uso de los instrumentos científicos que estime necesarios para determinar la concentración de alcohol en la sangre de los conductores que sean detenidos por conducir o hacer funcionar vehículos bajo los efectos de bebidas embriagantes, drogas o sustancias controladas. La ley especifica que dicha facultad se extiende al instrumento que utilizará el agente del orden público para hacer la prueba inicial de aliento.
De igual forma, el Art. 7.09(¿) del estatuto en controversia dispone lo siguiente:
Todo documento en el que el Departamento de Salud in-forme un resultado sobre un análisis realizado en su laborato-rio y cualquier otro documento que se genere de conformidad con la reglamentación que promulgue el Departamento de Sa-lud a tenor con las disposiciones de este Artículo, emitido con la firma de funcionarios autorizados y su sello profesional de ser requerido y bajo el sello oficial del Departamento de Salud, deberá ser admitido en evidencia como prueba “prima facie”. (Énfasis suplido.) 2000 (Parte 1) Leyes de Puerto Rico 85, 218.
De la disposición antes citada se deduce que para poder ser admitidos en evidencia, los documentos oficiales rela-cionados a pruebas químicas o físicas autorizadas por la Ley de Vehículos y Tránsito deben cumplir con la regla-mentación que promulgue el Departamento de Salud.
Dicha dependencia, en efecto, aprobó el Regla- *946 mentó 6346, al amparo de la autoridad otorgada por la Ley de Vehículos y Tránsito. El referido Reglamento regula los métodos y procedimientos para tomar pruebas que sirven para detectar los niveles de alcohol, drogas y otras sustan-cias controladas en la sangre. Entre otras cosas, dicho re-glamento establece el procedimiento para certificar los operadores de los instrumentos adoptados para realizar pruebas de aliento, así como los requisitos para su mante-nimiento, reparación, cotejo y calibración. En lo pertinente al caso de autos, el Reglamento 6346 dispone lo siguiente:
Art. 8.14: Antes de realizar una prueba con el "Intoxylizer,” la persona intervenida se mantendrá bajo observación por un pe-riodo mínimo de veinte (20) minutos, contados a partir de la hora de la intervención, para asegurarse que no existe alcohol residual en su boca al momento de efectuar el análisis.
Art. 8.15: Durante esos veinte (20) minutos, la persona se mantendrá bajo observación; evitando que fume, ingiera ali-mentos o se provoque vómito. De ocurrir uno de los anteriores, [el agente] deberá esperar veinte (20) minutos adicionales a partir de la hora en que ocurrió el evento, lo cual se documen-tará por el agente interventor y/o el operador del instrumento encargado de realizar la prueba.
A su vez, la regulación en cuestión establece que para efectuar la prueba de aliento, el operador del instrumento seguirá los pasos operacionales que aparecen en el Informe sobre Prueba de Alcohol por Aliento y Lista de Cotejo preparado por la Policía. Además, dispone que los resultados de los análisis mencionados serán aceptados como evidencia prima facie para la determinación de causa probable para el arresto. Véanse: Arts. 8.16 y 8.18 del Reglamento 6346.
Ahora bien, en cuanto a la presentación como evidencia de experimentos y prueba científica, resulta ampliamente conocido que en nuestra jurisdicción está gobernada por la Regla 82 de Evidencia, 32 L.P.R.A. Ap. IV. Sobre el particular, el inciso (A) de la mencionada regla dispone que la admisibilidad del resultado de un experi- *947 mentó o prueba científica será determinada por el tribunal, en conformidad con los factores enumerados en la Regla 19 de Evidencia, supra. De igual forma, la Regla 82(B) de Evi-dencia, supra, dispone que “[a]l estimar el valor o peso pro-batorio que ha de merecer una evidencia de carácter cien-tífico, el tribunal debe darle gran peso al grado de confiabilidad o certeza que la ciencia confiere al tipo de prueba en cuestión”. (Énfasis suplido.)
Por su parte, la Regla 19 de Evidencia, supra, establece claramente que la evidencia pertinente puede ser excluida cuando su valor probatorio es de poca significación en relación con cualesquiera factores enumerados. Los referidos factores son: peligro de causar perjuicio indebido, probabilidad de confusión y desorientación del Jurado, dilación de los procedimientos, e innecesaria presentación de prueba acumulativa. Sobre el particular, anteriormente hemos expresado que la admisión de prueba científica es materia de discreción judicial que se ejerce al amparo de los factores contenidos en la citada Regla 19 de Evidencia. Véanse: Pueblo v. Calderón Álvarez, 140 D.P.R. 627 (1996); E.L. Chiesa, Tratado de derecho probatorio: Reglas de Evidencia de Puerto Rico y federales, República Dominica, Ed. Corripio, 1998, T. II, págs. 1079-1086.
El profesor Chiesa Aponte sostiene que a la hora de decidir sobre la admisibilidad de prueba científica bajo los parámetros establecidos en la Regla 19 de Evidencia, supra, el tribunal debe considerar el valor probatorio de la prueba científica en controversia, para lo cual es necesario estimar su grado de certeza y confiabilidad, conforme a lo dispuesto en la Regla 82(B) de Evidencia, supra. Véase Chiesa, op. cit., págs. 1082-1085. Para ilustrar este particular, el profesor Chiesa Aponte hace referencia a pasados pronunciamientos de este Tribunal del elemento de confiabilidad de prueba científica al momento de determinar su admisibilidad, en el contexto de las pruebas de sangre para *948 determinar paternidad. Así, en Pueblo v. Maisonave Rodríguez, 129 D.P.R. 49, 68 (1991), se hizo hincapié en que la confiabilidad y admisibilidad de estas pruebas depende de que sean hechas por peritos debidamente calificados que sigan las más estrictas normas exigidas para esta clase de análisis y se observen las normas relativas a la cadena de evidencia en su presentación ante los tribunales. Chiesa, op. cit., pág. 1082.
De igual forma, reconociendo la importancia de la confiabilidad de cualquier evidencia que pretenda ser admitida, el profesor Chiesa Aponte opina que se excluye evidencia pertinente cuando se estima que es preferible sacrificar su valor probatorio antes de comprometer la búsqueda de la verdad con esa evidencia que tiene potencial de inducir a error. Se trata aquí de falta de confiabilidad. Chiesa, op. cit., T. I, pág. 2.
En el caso de autos, el Tribunal de Apelaciones validó la procedencia de la solicitud de supresión de la prueba de aliento realizada al señor Montalvo Petrovich al amparo de la Regla 234 de Procedimiento Criminal, supra. Según el referido foro, los agentes del orden público no mantuvieron bajo observación por un mínimo de veinte minutos al señor Montalvo Petrovich antes de realizarle la prueba de aliento, tal como exige el Reglamento 6346. El tribunal de-terminó que dicho incumplimiento afectaba la confiabili-dad de la prueba de aliento, por lo que concluyó que ésta era inadmisible.
Por todo lo anterior, debemos determinar si el incumpli-miento con el requisito de veinte minutos de observación previo a realizar una prueba de aliento para determinar los niveles de alcohol en la sangre acarrea la inadmisibili-dad de la referida prueba. No obstante, antes de atender dicha controversia, es necesario aclarar si la citada Regla 234 de Procedimiento Criminal es el vehículo procesal ade-cuado para solicitar la supresión de una prueba de aliento previo al comienzo del juicio en su fondo.
*949 III
La citada Regla 234 de Procedimiento Criminal es el medio práctico procesal mediante el cual un ciudadano puede solicitar la supresión de evidencia obtenida en violación a la protección constitucional en contra de registros, incautaciones y allanamientos irrazonables. Véase Pueblo v. Blase Vázquez, 148 D.P.R. 618, 627 (1999). Si bien esta regla parece estar diseñada exclusivamente para solicitar la supresión de evidencia fundamentada en la protección constitucional antes mencionada, este Tribunal ha reconocido su uso en otras circunstancias.
Así, por ejemplo, en Pueblo v. Rey Marrero, 109 D.P.R. 739 (1980), reconocimos que los mismos principios que rigen la Regla 234 de Procedimiento Criminal, supra, deben regir si se trata de suprimir un testimonio que —de resul-tar inadmisible— obligaría a la desestimación de los cargos y la absolución del acusado. En ese caso, no se trataba de evidencia producto de un registro o allanamiento ilegal, sino de un testimonio de identificación que, según el Tribunal, resultaba insuficiente para inculpar al acusado.
Además, en dicha ocasión expresamos que la razón de ser de la regla es tanto la economía de tiempo como de gastos. Resulta contrario a esa economía esperar al día del juicio para hacer una pausa para dilucidar la cuestión co-lateral sobre la admisibilidad de una prueba cuyo ofreci-miento en el juicio debió anticiparse. Pueblo v. Rey Marrero, supra, pág. 750. De esta manera, indicamos que aunque no haya imperativo constitucional para una vista de supresión de testimonio de identificación, nuestro orde-namiento exige que se solicite tal supresión antes del jui-cio, según la Regla 234 de Procedimiento Criminal, supra. Pueblo v. Rey Marrero, supra. Véase, además, E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1991, Vol. I, pág. 273.
*950 Así, pues, nada impide que se presente una solicitud de supresión de una prueba de aliento antes del comienzo del juicio en su fondo, tal y como se considera en la Regla 234 de Procedimiento Criminal, supra. Lo contrario daría al traste con la economía de tiempo y recursos que deben procurar los tribunales al atender un asunto colateral sobre la admisibilidad de una evidencia cuyo ofrecimiento se pudo anticipar. Véase Pueblo v. Rey Marrero, supra. Más aún, la procedencia de la moción presentada en el caso de autos se hace más patente porque se ha reconocido que las pruebas de aliento constituyen un registro para la protección constitucional en contra de registros y allanamientos ilegales. Véase Skinner v. Railway Labor Executive’s Assn., 489 U.S. 602 (1989).
Aclarada la viabilidad del uso de una solicitud de supre-sión en el caso de la prueba de aliento realizada al señor Montalvo Petrovich, debemos resolver si erró el foro apela-tivo al ordenar su supresión. Para ello, es necesario que determinemos si los agentes del orden público realmente incumplieron con el periodo de observación de veinte mi-nutos antes de realizar la prueba de aliento en cuestión y, de ser ese el caso, si dicho incumplimiento impide la admi-sión en evidencia de la referida prueba. Veamos.
IV
A. Como mencionamos anteriormente, el Reglamento 6346 dispone que antes de realizar una prueba de aliento, los agentes del orden público deben mantener bajo observación por un periodo no menor de veinte minutos al individuo a quien se le administrará la prueba. El objetivo de dicho periodo de observación es asegurarse de que no existe "alcohol residual” en su boca al momento de efectuarse el análisis. Véase Art. 8.14 del Reglamento 6346. El propio reglamento define alcohol residual como la cantidad de alcohol que permanece en la mucosa de la boca *951 por algún tiempo después de haberse ingerido alcohol, bien se encuentre en forma líquida o de vapor. Art. 4.03 del Reglamento 6346. Además, durante dicho periodo, los agentes deben evitar que el individuo fume, ingiera ali-mentos o se provoque vómito y, de ocurrir alguno de los anteriores eventos, se deben esperar veinte minutos adicio-nales a partir de la ocurrencia de éste. Art. 8.15 del Regla-mento 6346.
Este Tribunal no ha tenido la oportunidad de expresarse sobre las consecuencias —en cuanto a la presentación en evidencia de una prueba de aliento— del incumplimiento por parte de los agentes del orden público con el requisito reglamentario de veinte minutos de observación. Sin embargo, en Pueblo v. Nazario Hernández, 138 D.P.R. 760 (1995), se cuestionó la admisión de una prueba de aliento por alegadas incongruencias en la hoja de trámite cumpli-mentada por el agente que la realizó. En ese caso, la de-fensa alegó que en la hoja de trámite aparecía el nombre de un policía que no fue el que realizó la prueba de aliento impugnada. Además, adujo que parte del número de Se-guro Social del acusado aparecía en otra línea correspon-diente a la información de otro acusado. No obstante, el Tribunal entendió que las irregularidades señaladas no impedían la admisibilidad de la prueba y que cualquier cuestionamiento de si la prueba pertenecía al acusado o no sería dilucidado por el Jurado, el cual debía determinar su valor probatorio.
Por otra parte, en Pueblo v. Díaz Just, 97 D.P.R. 59 (1969), nos enfrentamos a urna solicitud de supresión debido a que —contrario a lo que disponía el reglamento del Depar-tamento de Salud aplicable— se había utilizado alcohol para desinfectar el brazo de un individuo a quien se le rea-lizó una prueba de sangre lo que, según la defensa, afectó la confiabilidad del resultado. Según los testimonios presenta-dos en corte, la enfermera que intervino con el acusado usó alcohol como desinfectante y el brazo de éste estaba mo- *952 jado cuando se le tomó la muestra. Tras analizar los argu-mentos de las partes y examinar la jurisprudencia de otros estados, señalamos que en esas circunstancias es posible que la muestra se adultere y que el alcohol usado como antiséptico afecte el resultado del análisis. Véase Pueblo v. Díaz Just, supra, pág. 61. Además, expresamos que dicha situación afectaba la confiabilidad de la prueba y conclui-mos que, “si surge duda fundada en cuanto a la confiabili-dad del análisis —tal como ocurrió en ese caso— es deber del juzgador rechazarlo”. (Enfasis suplido.) Id., pág. 63.
Dichas expresiones son cónsonas con la normativa discutida sobre la admisibilidad de prueba científica, conforme a la cual el tribunal debe hacer un balance entre el valor probatorio de la prueba ofrecida y el peligro de que ésta cause perjuicio indebido o confusión al Jurado, entre otros factores enumerados. Con ello, queda claro que en nuestra jurisdicción el valor probatorio de una evidencia científica —el cual depende en gran medida de su grado de confiabilidad y certeza— puede afectar su posible admisión como evidencia si el foro judicial concluye que éste es de poca significación en relación con los factores dispuestos en la Regla 19 de Evidencia, supra.
Al igual que en Puerto Rico, en la mayoría de las jurisdicciones estatales en Estados Unidos existen normas sobre el periodo de observación previo a la toma de una prueba de aliento. De hecho, algunos de esos tribunales estatales han tenido la oportunidad de examinar posibles incumplimientos con dicho requisito y han pautado normas relacionadas con la admisión en evidencia del resultado de estas pruebas ante tales incumplimientos. Dicha jurisprudencia apunta a que lo importante es determinar el impacto del alegado incumplimiento sobre la confiabilidad y certeza de la prueba, lo que a su vez afecta su valor probatorio y, por lo tanto, su admisibilidad. Examinemos, para fines ilustrativos, la referida jurisprudencia.
*953 B. El Tribunal Supremo de Colorado, al destacar que en dicho estado la Legislatura no estableció el periodo de observación de veinte minutos como un requisito para la admisibilidad de una prueba de aliento, concluyó que lo importante es que el tribunal crea que la prueba científica es confiable. Dicho tribunal sostuvo que antes de admitir la prueba en evidencia, el tribunal debe evaluar la magni-tud del incumplimiento con el reglamento de salud corres-pondiente y cómo éste afecta la validez y confiabilidad del resultado. People v. Bowers, 716 P.2d 471 (Colo. 1986).(6)
De esa forma, el tribunal rechazó establecer una regla de supresión automática y resolvió que lo importante es que la prueba de aliento cumpla con los requisitos tradicio-nales de admisibilidad de prueba científica. People v. Bowers, supra, pág. 475.(7) En vista de lo anterior, devolvió el caso al foro de instancia para que evaluara la admisibi-lidad de una prueba en la que se observó al individuo por diecinueve minutos. Véase, además, People v. Shinaut, 940 P.2d 380 (Colo. 1997).
Así también, los tribunales de Nuevo México han con-cluido que la imposibilidad del Estado para probar que hubo cumplimiento sustancial con el reglamento del De-partamento de Salud que regula la administración de pruebas de aliento podría constituir un impedimento para la admisibilidad de dicha prueba. Véase State v. Rivera, 124 N.M. 211 (N.M. 1997).(8) De otra parte, la extensa ju- *954 risprudencia de dicho estado en esta área ha aclarado que sólo acarrea la inadmisibilidad de una prueba de aliento el incumplimiento con aquellos requisitos reglamentarios que sean acurracy-ensuring. Esto es, aquellos requisitos dirigidos a garantizar la precisión y, por lo tanto, la confia-bilidad de la prueba. State v. Dedman, 136 N.M. 561 (N.M. 2004).(9)
Esta norma —o normas muy parecidas y hasta cierto punto equivalentes— ha sido adoptada por otros estados al determinar la admisibilidad de una prueba de aliento ante reclamos de incumplimiento con requisitos reglamentarios para su realización. Así se deriva de varios pronunciamien-tos de los tribunales supremos de estados como Rhode Island, Tennessee, Illinois, Florida, Massachusetts, Michigan y Alaska.
En Rhode Island, por ejemplo, recientemente se resolvió que la supresión de evidencia sólo se justifica cuando el incumplimiento con la regulación promulgada por el De-partamento de Salud ha afectado la validez del resultado de la prueba. State v. Cluley, 808 A.2d 1098 (R.I. 2002). Por su parte, los tribunales de Tennessee resolvieron que antes de admitir una prueba de aliento, el Estado debe probar que cumplió sustancialmente con el requisito de los veinte minutos de observación. Ello en vista de que el requisito de veinte minutos de observación es para garantizar la preci-sión de la prueba. Véanse: State v. Hunter, 941 S.W.2d 56 *955 (Tenn. 1997); State v. Sensing, 843 S.W.2d 412 (Tenn. 1992).
De forma similar, el Tribunal Supremo de Illinois con-cluyó que, aun cuando en los casos de embriaguez según la ley de tránsito de ese estado el incumplimiento con el re-glamento de salud conllevaba la inadmisibilidad de la prueba, en los casos de homicidio negligente lo que el Es-tado tiene que probar es el cumplimiento con los requisitos generales de admisibilidad de prueba científica, entre los cuales se destacan probar los elementos de validez y certeza. Véanse: State v. Keith, 148 Ill.2d 32 (Ill. 1992); State v. Emrich, 113 Ill.2d 343 (Ill. 1986).
Determinaciones análogas han sido tomadas por los tribunales de otros estados. Dichos estados —en esencia— han resuelto que desviaciones reglamentarias menores no deben ser obstáculo para que las pruebas de aliento sean presentadas en evidencia, pero si el Estado no presenta prueba de la confiabilidad e integridad de la prueba de aliento y el instrumento utilizado, el resultado podría ser inadmisible. Lo importante es determinar si el incumpli-miento con el reglamento correspondiente afecta la preci-sión de la prueba. Véanse: People v. Bain, 2007 Mich. App. 1647 (Mich. 2007); State v. Donaldson, 579 So.2d 728 (Fla. 1991). Véanse, además: Commonwealth v. During, 406 Mass. 485 (Mass. 1990); Keel v. State, 609 P.2d 555 (Alaska 1980); Wester v. State, 528 P.2d 1179 (Alaska 1974).
Por otra parte, la mayoría de las jurisdicciones estatales han adoptado el estándar de cumplimiento sustancial para establecer que aun cuando el Estado tiene que demostrar que se cumplió con ciertos requisitos reglamentarios al ad-ministrar pruebas de aliento, dicho cumplimiento no tiene que ser estricto o literal, siempre que se cumpla con el pro-pósito perseguido por la regulación. Fundamentado en lo anterior, las desviaciones reglamentarias menores no de-ben ser obstáculo para la admisión del resultado de una prueba de aliento. Veamos.
*956 C. A modo ilustrativo, se ha resuelto que hay cumpli-miento sustancial cuando la persona fue observada por me-nos de veinte minutos inmediatamente antes de realizarle la prueba, siempre que dicho tiempo se pueda sumar al tiempo que la persona estuvo detenida en la patrulla —de manera que se pueda llegar a los veinte minutos— y no se presentó prueba de que la persona ingirió comida, fumó o vomitó. La mera alegación hipotética de que la persona pudo haber ingerido algo durante el periodo de observación no es suficiente para impedir la admisión de la prueba realizada. Véanse: State v. Releigh, 2007 Ohio 5515 (Ohio 2007); State v. Crawford, 2001 Ohio App. Lexis 5582 (Ohio 2001). Varias decisiones del Tribunal Supremo de Ohio han reiterado esta norma. Véanse: State v. Boczar, 113 Ohio St.3d 148 (Ohio 2007); City of Defiance v. Kretz, 60 Ohio St.3d 1 (Ohio 1991); State v. Plummer, 22 Ohio St.3d 292 (Ohio 1986).
A igual resultado se ha llegado cuando se suma el tiempo que transcurrió desde que los agentes intervinieron con la persona y le hicieron las advertencias de rigor hasta que se le realizó la prueba de aliento. Wester v. State, supra. Así también, se ha resuelto que un agente que —por descuido— no marcó cierto procedimiento en la lista de cotejo pero que presentó testimonio de que el procedi-miento en efecto se realizó, cumple sustancialmente con el periodo de observación. En esas circunstancias no se afecta la confiabilidad del resultado. Keel v. State, supra, citando a Oveson v. Municipality of Anchorage, 574 P.2d 801 (Alaska 1978). Por otro lado, en Tennessee se admitió una prueba de aliento a pesar de que la defensa alegó que no se cumplió con el periodo de observación porque el agente que observó al acusado antes de realizarla no fue el mismo que la administró. State v. Hunter, supra.
En otros estados también se ha resuelto que se cumple sustancialmente con el periodo de observación, aun cuando no se mantenga contacto ininterrumpido, cara a cara, con *957 el acusado. De esta manera, se ha permitido la admisión en evidencia de pruebas de aliento a pesar de alegaciones de que no hubo observación continua mientras el agente guiaba la patrulla, preparaba el intoximeter para su uso, o cumplimentaba algunos documentos. Según dicha juris-prudencia, lo importante es que el agente esté cerca del acusado, de forma que pueda determinar si la persona in-girió bebidas alcohólicas o introdujo algún material ex-traño en su boca, fumó o vomitó. State v. Smith, 547 A.2d 69 (Conn. 1988). Véanse, además: State v. Luckett, 2002 Tenn. Crim. App LEXIS 174 (Tenn. 2001); State v. Hunter, supra; Barone v. State Dept. of Revenue, 736 P.2d 432 (Colo. 1987).(10)
De la anterior discusión se deduce que las normas adop-tadas por la mayoría de los tribunales estatales citados coinciden en varios aspectos. En primer lugar, ya sea por disposición expresa de una ley especial o porque así lo dicta el derecho probatorio aplicable, para que las pruebas de aliento puedan ser admitidas en evidencia, éstas deben ha-berse realizado conforme al reglamento que promulgue el Departamento de Salud o la agencia así autorizada en cada estado. En segundo lugar, no todo incumplimiento acarrea la inadmisibilidad de la prueba. A esos efectos, el tribunal debe determinar el impacto de dicho incumpli-miento sobre su precisión y confiabilidad. Por último, no es necesario un cumplimiento estricto o literal con el regla- *958 mentó correspondiente; es suficiente un cumplimiento sustancial.
En lo concerniente al caso de autos, tanto la Ley de Vehículos y Tránsito (la cual dispone en lo pertinente que “todo documento que se genere de conformidad con la reglamentación que promulgue el Departamento de Salud a tenor con las deposiciones de esta sección ... deberá ser admitido en evidencia como prueba prima facie”), como las normas de derecho probatorio aplicables a evidencia científica, requieren que se cumpla con los requisitos dispuestos en el Reglamento 6346 para realizar pruebas de aliento. Sobre todo, se debe cumplir con aquellos requisitos cuyo objetivo es garantizar un mínimo de precisión y confiabilidad de la prueba realizada, como es el caso del periodo de observación de veinte minutos previo a realizar una prueba de aliento.
Ahora bien, un cumplimiento estricto o literal no es ne-cesario, pues es suficiente cumplir sustancialmente con los objetivos perseguidos por dicha regulación. Por lo tanto, antes de admitir en evidencia una prueba de aliento, el tribunal debe velar por que ésta se haya realizado si-guiendo el procedimiento correcto, de manera que se ga-rantice un mínimo de confiabilidad y precisión. Ello in-cluye requerir que el Estado demuestre que la persona que administró la prueba estaba debidamente cualificada y certificada por el Departamento de Salud y que dicha cer-tificación estaba vigente cuando se realizó la prueba; que el instrumento había sido aprobado por el Departamento de Salud, certificado y calibrado conforme a la regulación aplicable, y que estaba funcionando apropiadamente.
Además, se debe establecer que se cumplió sustancial-mente con los estándares y procedimientos reglamentarios y operacionales para pruebas de aliento —en particular aquellos dirigidos a garantizar un mínimo de precisión y confiabilidad— incluso el periodo de observación de veinte minutos. Por último, se debe identificar el resultado de la *959 prueba de aliento presentado en evidencia como el corres-pondiente a la prueba realizada al acusado.
Según lo anterior, no procede establecer una regla de exclusión automática ante cualquier incumplimiento con el procedimiento dispuesto por la regulación pertinente a la realización de pruebas de aliento. Por el contrario, el tribunal debe determinar —caso a caso— la magnitud de la desviación y el impacto que ésta puede tener sobre la confiabilidad y precisión de la evidencia. Si el referido incumplimiento es de tal magnitud que a juicio del juzgador la prueba ya no es confiable, es deber del tribunal rechazarla. Véase Pueblo v. Díaz Just, supra.
V
En el caso de autos, las determinaciones hechas por el foro de instancia apuntan a que el señor Montalvo Petro-vich no fue observado por más de quince minutos. Ello es así, aun si sumáramos el tiempo transcurrido desde que los agentes intervinieron con el acusado a las 4:20 a.m., hasta que fue conducido al Cuartel de la Policía en una patrulla y se inició la prueba de aliento a las 4:35 a.m. Nótese que aun cuando los agentes llegaron a la escena del accidente a eso de las 4:10 a.m., el informe policiaco estableció que no fue hasta las 4:20 a.m. —luego de controlar el tránsito y cami-nar una distancia aproximada de cuatrocientos a quinien-tos pies— que éstos llegaron hasta donde se encontraba el señor Montalvo Petrovich e intervinieron con él. Es por ello que el tiempo reglamentario debe contarse a partir del mo-mento en que los agentes intervinieron con el acusado y estaban en posición de observarlo para poder determinar si éste ingirió alimentos, fumó o se provocó vómito. En este caso, dicha observación fue posible a partir de las 4:20 a.m.
Por otro lado, es menester aclarar que los hechos que *960 originaron la controversia de autos son claramente distin-guibles de las situaciones planteadas en los casos discuti-dos previamente en esta opinión sobre cumplimiento sus-tancial con el periodo de observación. En el presente caso, los quince minutos a los que hemos hecho referencia inclu-yen el tiempo transcurrido desde que los agentes intervi-nieron con el acusado hasta el momento en que le realiza-ron la prueba de aliento, por lo que no se puede sumar ningún otro periodo de tiempo en el que éste estuviera cerca de los agentes de forma que se pudiera determinar si ocurrió algún evento que afectara la confiabilidad de la prueba.
De igual forma, tal como se ha hecho en otras jurisdic-ciones estatales, al calcular el periodo de observación no lo hemos limitado al tiempo transcurrido desde que el agente que le realizó la prueba de aliento al acusado llegó a la escena e intervino con éste. Por el contrario, lo hemos cal-culado desde el momento en que los primeros agentes lle-garon hasta el acusado, aunque éstos no fueron los que le realizaron la prueba de aliento. De hecho, si calculáramos el periodo de observación desde el momento en que el agente Soto Cabán intervino con el señor Montalvo Petro-vich, tendríamos que concluir —tal como hizo el foro de instancia— que éste fue de sólo trece minutos.
No estamos ante alegaciones de que aun cuando trans-currieron veinte minutos o más desde que se intervino con el acusado, la observación hecha por los agentes no fue ininterrumpida o cara a cara, lo cual como mencionamos anteriormente no es necesario, según se ha resuelto en otras jurisdicciones. Véase State v. Smith, supra. En el pre-sente caso, las alegaciones de la defensa y las determina-ciones del foro de instancia son que —en total— no trans-currieron más de quince minutos antes de realizarle la prueba de aliento al señor Montalvo Petrovich, contados a partir del momento en que los primeros agentes llegaron hasta donde éste se encontraba.
*961 En vista de ello, resulta forzoso concluir que el Estado no probó haber cumplido sustancialmente con el periodo de observación. Ello crea serias dudas sobre la confiabilidad de la prueba de aliento y afecta significativamente su valor probatorio. En tales circunstancias, tomando en cuenta las normas de derecho probatorio aplicables a la presentación de prueba científica y la Ley de Vehículos y Tránsito, así como el hecho de que la prueba realizada al señor Mon-talvo Petrovich reflejó un nivel de alcohol de .08% —el mí-nimo prohibido por ley— no erraron los foros inferiores al excluir la prueba de aliento.
Ahora bien, nada impide que el Estado presente otra evidencia para intentar probar que el señor Montalvo Pe-trovich se encontraba bajo los efectos de bebidas embria-gantes la madrugada del accidente. Por eso se debe eva-luar el dominio que éste tenía sobre sí mismo, la apariencia de sus ojos, el dominio del habla, el grado de control que ejerció sobre su vehículo hasta el momento del accidente, su estado anímico, así como cualquier otro factor que refleje el estado de sus facultades físicas y mentales. Véase Pueblo v. Díaz Just, supra.
Por los fundamentos antes expuestos, se confirma el dic-tamen emitido en este caso por el Tribunal de Apelaciones y se devuelve el caso al foro de instancia para que continúe con los trámites ulteriores conforme a lo aquí resuelto.

Se dictará sentencia de conformidad.

 Esta información se deduce del informe preparado por los agentes.

 Según surge del expediente, el señor Montalvo Petrovich se sometió volun-tariamente a la prueba de aliento.

 Es necesario señalar que el foro de instancia determinó que sólo transcurrie-ron trece minutos desde que el agente Soto Cabán intervino con el acusado y lo arrestó hasta que se le realizó la prueba de aliento. No obstante —por razones que expondremos más adelante— entendemos que los veinte minutos reglamentarios deben ser calculados desde el momento en que los primeros agentes llegaron hasta donde se encontraba el señor Montalvo Petrovich, a pesar de que éstos no fueron los *942 que finalmente le realizaron la prueba de aliento. Ello por ser ese el momento a partir del cual los agentes estuvieron en posición de observarlo y poder determinar si el acusado ingirió alimentos, fumó o vomitó, o colocó algún material extraño en su boca.

 Desde hace décadas este Tribunal reconoció el análisis del contenido de alcohol en la sangre como un medio adecuado y confiable para medir los efectos de las bebidas embriagantes en una persona. Véase Pueblo v. Tribunal Superior, 84 D.P.R. 392 (1962).

 En Pueblo v. Figueroa Pomales, 172 D.P.R. 403 (2007), determinamos que se puede hacer referencia al por ciento de alcohol establecido en la Ley de Vehículos y Tránsito de Puerto Rico al instruir al Jurado sobre el significado de la frase “bajo los efectos de bebidas embriagantes” incluida en el Art. 109 del Código Penal, 33 L.P.R.A. see. 4737. Dicha disposición tipifica como delito de homicidio negligente, en su modalidad agravada, ocasionar la muerte de un ser humano al conducir bajo los efectos de bebidas embriagantes.

 Específicamente, el tribunal expresó:
“Under our holding here, it will be incumbent to the trial court to determine, as a preliminary question of admissibility under CRE 104[la regla de evidencia pertinente], whether the extent of noncompliance with a Board of Health rule has so impaired the validity and reliability^ of the testing method and the test results as to render the evidence inadmissible.” (Enfasis suplido.) People v. Bowers, 716 P.2d 471, 475 (Colo. 1986).

 Entre estos requisitos, el tribunal mencionó el que se establezca que la prueba es confiable, que el equipo estaba funcionando adecuadamente al momento de la prueba y que fue utilizado correctamente por una persona cualificada. People v. Bowers, supra pág. 473.

 Antes de una enmienda a la ley —que estableció que el Estado debe cumplir con el Reglamento adoptado por el Departamento de Salud para lograr la admisión *954 de las pruebas de aliento— los tribunales del estado de Nuevo México habían re-suelto que cualquier incumplimiento con los requisitos de dicho reglamento sólo afec-taba el valor probatorio de las referidas pruebas. Véase State v. Watkins, 104 N.M. 561 (N.M. 1986).

 En ese caso se aclaró el alcance de las decisiones tomadas por la Corte de Apelaciones de ese estado en State v. Gardner, 126 N.M. 125 (N.M. 1998), y en State v. Onsurez, 132 N.M. 485 (N.M. 2002). En ambas decisiones el foro apelativo ordenó la supresión de las pruebas de aliento por incumplimiento con requisitos acurracy-ensuring, como los veinte minutos de observación y la certificación anual y calibra-ción del Intoxylizer 5000. Según el tribunal, ambos requisitos buscan garantizar un mínimo de confiabilidad en el resultado de la prueba. En lo pertinente al caso de autos, en Gardner, el tribunal determinó que el período de observación fue de quince minutos y no de veinte, como disponía el reglamento, lo cual resultó en la exclusión de la prueba.

 En un intento por elaborar una norma coherente sobre la admisión de prue-bas de aliento, el Tribunal Supremo de Tennessee resolvió que en dicha jurisdicción el estado debe cumplir con seis requisitos; a saber: se debe establecer, mediante testimonio del agente que realizó la prueba, que ésta fue administrada en conformi-dad con los estándares y procedimientos operacionales promulgados por las agencias correspondientes; que el agente que administró la prueba había sido debidamente certificado para realizarla; que el instrumento había sido certificado por la agencia correspondiente, había sido probado regularmente para asegurar su precisión y es-taba funcionando adecuadamente al momento de realizarse la prueba; que el conductor fue observado durante los veinte minutos reglamentarios antes de la prueba y que durante ese periodo de observación no tenía ningún material extraño en su boca, no consumió bebidas alcohólicas, no fumó, ni vomitó; que el agente siguió los procedimientos operacionales requeridos, y que se identifique el resultado impreso ofrecido en evidencia como el resultado correspondiente a la prueba administrada al acusado. Véase State v. Sensing, 843 S.W.2d 412, 418 (1992).