Colón Birriel, Juez Ponente
TEXTO COMPLETO DE LA RESOLUCION
I
Christian Matías González (en adelante el "peticionario") solicitó mediante su Petición de Certiorari revocáramos una Resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Utuado (el “TPF), el 9 de mayo de 2003, notificada el 10 de junio de ese año. El dictamen declaró No Ha Lugar su moción de supresión de evidencia predicada, en esencia, en que la ocupación de la evidencia fue el producto de una intervención ilegal; sin que el agente que la ocupara tuviera motivos fundados para ello; el testimonio del agente fue uno estereotipado (acto ilegal a plena vista), lo que iba a la credibilidad de su declaración; y que por tratarse de una incautación de evidencia sin orden judicial, se presumía que fue el producto de un registro ilegal e irrazonable, correspondiéndole al Estado rebatir dicha presunción.
Por su parte, el Pueblo de Puerto Rico, representado por el Procurador General en su Escrito en Cumplimiento de Orden, se opuso a la expedición del auto.
Resolvemos con el beneficio de los escritos.
II
El peticionario fue denunciado el 4 de octubre de 2002 por una infracción al Artículo 411-A de la Ley de Sustancias Controladas, 24 L.P.R.A. § 2411 (a), haber distribuido la sustancia controlada conocida como *724 marihuana en la Escuela Pública e Intermedia Ramón De Jesús Sierra o en sus alrededores, ubicada en el Kilómetro 3, de la Avenida Los Patriotas en Lares, Puerto Rico, hechos ocurridos ese mismo día aproximadamente a la 1:30 p.m. Ese mismo día, 4 de octubre, se encontró causa probable para su arresto y se le impuso una fianza de $75,000 para su libertad provisional hasta el día del juicio. Posteriormente, el 21 de octubre de 2002, se celebró la vista preliminar determinándose causa probable para acusarlo por el delito imputado. Posteriormente, el Ministerio Público presentó la correspondiente acusación, luego de la cual, el juicio quedo señalado para el 16 de diciembre de 2002.
Oportunamente, el peticionario solicitó la supresión de la evidencia que le fuera ocupada. Tras varias suspensiones, la vista de supresión se celebró finalmente el 3 de abril de 2003, ante el Hon. Oscar Sánchez Lamboy. En la vista declaró el agente Luis R. Romero Soto (el agente Romero).
Exponemos a continuación lo ocurrido en la vista de supresión, según los escritos ante nuestra consideración. Veamos.
El agente Romero declaró en el interrogatorio directo del Ministerio Público, que el 4 de octubre de 2002 se encontraba en unión a otros dos agentes investigando unas confidencias recibidas relacionadas a personas que vendían o introducían sustancias controladas en los alrededores de las escuelas del área urbana del Municipio de Lares. A esos fines, se ubicó en el área del estacionamiento de comida rápida Burger King localizado en la Avenida Los Patriotas en la carretera 111 del Municipio de Lares, por razón de que al otro lado de la avenida ubican la Escuela Superior e Intermedia. A requerimientos del representante del Ministerio Público, el agente Romero dibujó en una pizarra que dispone el tribunal para esos fines, un croquis del área vigilada. Luego de establecer el lugar o punto donde se encontraba haciendo la vigilancia y donde ubicaban las escuelas, continuó su testimonio. Atestó que a la 1:25 p.m. aproximadamente observó caminando por la acera al peticionario, a quien conocía como'Cristian El Ronco, quien era una de las personas mencionadas en la confidencia. Vestía camiseta roja y mahones anchos azules.
Continuó declarando que al llegar frente a la escuela, se le acercó al peticionario un jovencito de tez blanca, recorte pegado, pelo obscuro, con uniforme de la escuela. Hablaron brevemente y el jovencito le hizo entrega al peticionario de dos billetes, quien sacó del bolsillo lado derecho una bolsa plástica transparente de la que extrajo una bolsita plástica transparente con aparente picadura de marihuana y se la entregó al jovencito. El jovencito caminó hacía la escuela y el peticionario continuó caminando por la acera. En ese momento, el agente Romero se comunicó por radio con sus compañeros quienes lo recogieron. Intervinieron con el peticionario aproximadamente de cien a ciento cincuenta metros más abajo del lugar; le ocuparon en el bolsillo derecho de su pantalón, una bolsa plástica transparente con cierre a presión con un emblema de una fruta anaranjada y verde y números verdes. La bolsa contenía en su interior diecisiete (17) bolsitas plásticas transparente a presión y calor con aparente picadura de marihuana en su interior y un billete de cinco dólares y cinco billetes de uno. Arrestaron al peticionario y se le leyeron las advertencias de ley. Con esto concluyó por parte del Ministerio Público el interrogatorio del agente Romero.
En el turno del contrainterrogatorio al agente Romero por el representante del peticionario, declaró como sigue. Al momento de observar la supuesta transacción en el estacionamiento del Burger King se encontraba ubicado en la esquina derecha de dicho establecimiento mirando de frente al establecimiento. Se le confrontó con que esa ubicación no quedaba frente a frente de la escuela, interviniendo el juez que intervenía en la vista. Este indicó que conocía la ubicación de los edificios en controversia.
Atesto que no arrestó al supuesto comprador por razón de que la prioridad en ese momento era arrestar al vendedor; no obstante, versar las supuestas confidencias sobre uso y venta de drogas en las escuelas de Lares, no coordinó con las autoridades escolares para recibir su apoyo; ese día ni en días posteriores no hizo gestión alguna, para detener y/o arrestar al supuesto comprador. Fue confrontado con su informe de incidente a raíz de *725 los hechos, donde no describía al supuesto comprador físicamente, ni tan siquiera en cuanto a su vestimenta. Con esto concluyó por parte de la representación del peticionario el contrainterrogatorio del agente Romero, quedando la supresión solicitada sometida por las partes.
Así las cosas, el TPI motu proprio decidió celebrar una vista ocular señalándola para el 15 de abril a la 1:30 p.m. Luego de algún tiempo en el área, específicamente en el área del estacionamiento del Burger King, donde el Juez que presidió la vista y las partes observaron al agente Romero moverse a través de la Avenida Los Patriotas, en apoyo de su declaración, el TPI declaró No Ha Lugar la supresión solicitada.
Inconforme con la decisión, el peticionario le imputa al TPI haber errado al denegar su solicitud de supresión de evidencia: 1) justificando su decisión a base de los motivos fundados del agente Romero para la intervención y descartar la jurisprudencia aplicable; ignorar la posible presencia de testimonio estereotipado del agente Romero, lo que afectaba su credibilidad; y 2) cuando la prueba presentada por el Estado no logró rebatir la presunción constitucional de irrazonabilidad de los registros sin mediar orden judicial.
III
De entrada, señalamos que una vista de supresión de evidencia tiene el propósito específico de determinar la legalidad y razonabilidad de la ocupación de la evidencia delictiva sin orden judicial; determinación que es revisable ante el tribunal apelativo por vía de certiorari. Pueblo v. Rivera Rivera, 117 D.P.R. 283, 290 (1986); Pueblo v. Miranda Alvarado, 143 D.P.R. 356, 359 (nota al calce 1) (1997). A los fines de establecer la validez de un registro, y la consiguiente ocupación de evidencia delictiva, no se exige una calidad de prueba “más allá de duda razonable” como se requiere para una convicción, pues no se está dilucidando la culpabilidad o inocencia del acusado.
La Cuarta Enmienda de la Constitución de los Estados Unidos establece una garantía contra registros y allanamientos irrazonables. De igual forma, el Artículo II, Sección 10 de la Constitución del Estado Libre Asociado de Puerto Rico dispone lo siguiente:

“No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.

No se interceptará la comunicación telefónica.

Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.

Evidencia obtenida en violación de esta sección será inadmisible en los tribunales. ”

Esta cláusula garantiza el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables. Pueblo v. Calderón Díaz, Op. de 5 de abril de 2002, 2002 J.T.S. 48. En Pueblo v. Martínez Torres, 120 D.P.R. 496, 500 (1988), nuestro Tribunal Supremo resolvió que el propósito de esta garantía constitucional es "proteger la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias e interponer la figura del juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad a la intrusión".
De ordinario, todo registro, allanamiento o incautación que se realice, no importa su índole penal o administrativa, se presume irrazonable cuando se lleva a acabo sin orden judicial previa. E.L.A. v. Coca Cola Bott. Co., 115 D.P.R. 197, 207 (1984). Le compete al Ministerio Público rebatir tal presunción de invalidez presentando pmeba sobre las circunstancias especiales en las cuales se permite actuar sin orden. Pueblo v. *726 Ramos Santos, 132 D.P.R. 363, 370 (1992); Pueblo v. Malavé González, 120 D.P.R. 470, 476 (1988); Pueblo v. Falú Martínez, 116 D.P.R. 828, 838-839 (1986); Pueblo v. Lebrón, 108 D.P.R. 324, 329 (1979).
No obstante, la Regla 11 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, provee un mecanismo procesal mediante el cual se puede efectuar válidamente un arresto en ausencia de una orden judicial previa. Dicho arresto es permisible para un agente del orden público en las siguientes circunstancias:

“(a) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia. En este caso deberá hacerse el arresto inmediatamente o dentro de un término razonable después de la comisión del delito. De lo contrario, el funcionario deberá solicitar que se expida una orden de arresto.

(b) Cuando la persona arrestada hubiese cometido un delito grave (felony), aunque no en su presencia.

(c) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave (felony), independientemente de que dicho delito se hubiere cometido o no en realidad. ”

Por otro lado, la Regla 234 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, le permite a la parte agraviada por un registro o allanamiento irrazonable solicitarle al tribunal la supresión de la evidencia obtenida en virtud de tal acto ilegal. Este principio también aplica cuando estamos ante un testimonio que, de ser inadmisible, daría lugar a la desestimación de los cargos y a la absolución del acusado. Pueblo v. Rey Marrero, 109 D.P.R. 739, 750 (1980). Tal es el caso de los testimonios estereotipados.
Nuestro Tribunal Supremo ha manifestado en ocasiones anteriores que un testimonio estereotipado es aquél que se reduce a establecer los elementos mínimos necesarios para sostener un delito, sin incluir detalles imprescindibles para reforzarlos. Pueblo v. Acevedo Estrada, Op. de 19 de enero de 2000, 2000 J.T.S. 22, 570; Pueblo v. Camilo Meléndez, 148 D.P.R. 539, 558 (1999); Pueblo v. Rivera Rodríguez, 123 D.P.R. 467, 480 (1989); Pueblo v. Almodóvar, 109 D.P.R. 117, 125 (1979); Pueblo v. González del Valle, 102 D.P.R. 374, 377 (1974).
Ha expresado nuestro alto foro, que un testimonio estereotipado debe evaluarse con cuidado y, a esos fines, estableció las siguientes pautas: (1) todo testimonio estereotipado debe ser escudriñado con especial rigor; (2) tanto los casos de la evidencia abandonada o lanzada al suelo como los casos del acto ilegal a plena vista deben, en ausencia de otras consideraciones, incluir sospecha de la posible existencia de testimonio estereotipado; (3) cuando el testimonio es inherentemente irreal o improbable debe ser rechazado; (4) el testimonio estereotipado puede perder su condición de tal si, yendo más allá de los datos indispensables para probar los requisitos mínimos de un delito, se le rodea de las circunstancias en que funciona el agente, el término de su investigación, los resultados obtenidos fuera del caso en trámites y otros detalles; (5) la presencia de contradicciones o vaguedades en el testimonio debe tender a reforzar el recelo con que hay que escuchar esta clase de declaraciones; y 6) el peso de la prueba de librar el testimonio estereotipado de sospecha recae en el fiscal. González del Valle, 102 D.P.R. a la pág. 378.
El uso de declaraciones estereotipadas por cualquier tipo de testigo, incluyendo el caso de los agentes del orden público, deben ser objeto de escrutinio riguroso por los tribunales para evitar que declaraciones falsas o inexactas vulneren derechos de ciudadanos inocentes. Camilo Meléndez, 148 D.P.R. a la pág. 558.
La sospecha de que se está ante un testimonio estereotipado no significa que el testimonio deba descartase siempre. El testimonio estereotipado puede perder su condición como tal si va más allá de los datos indispensables para probar los requisitos mínimos del delito y provee detalles sobre la investigación. Pueblo en interés menores A.L.R.G. y F.R.G., 132 D.P.R. 990, 1007 (1993). Como ha expresado nuestro Tribunal *727 Supremo: “hoy en día no cabe hablar de un testimonio estereotipado meramente por tratarse de un acto delictivo a plena luz del día”. Pueblo v. Torres García, 137 D.P.R. 56, 67 (1994). Por el contrario, la criminalidad y el trasiego de drogas que sufre nuestro país ha llegado a un nivel que los delincuentes no temen realizar transacciones donde pueden estar sujetos a ser vistos por terceras personas. Véase, Pueblo en interés de los menores A.L.R.G. y F.R.G., 132 D.P.R. a la pág. 1007; Pueblo v. Espinet Pagán, 112 D.P.R. 531, 536-37 (1982).
En el particular caso ante nuestra consideración, en la vista de supresión de evidencia realizada ante el TPI, el peticionario tuvo la oportunidad de esgrimir la defensa de testimonio estereotipado, y así lo hizo. Teniendo dicho foro al agente Romero quien testificó ante su presencia, evidentemente evaluó su testimonio a la luz de los requerimientos establecidos en González del Valle, 132 D.P.R. a al pág. 378, y, aún así, decidió concederle entera credibilidad al testimonio.
En este punto es de rigor recalcar que cuando un peticionario opta por impugnar un dictamen producido después de que el foro recurrido haya escuchado y aquilatado prueba testifical, la norma imperante en Puerto Rico es que los tribunales apelativos no intervendrán con la apreciación y adjudicación de credibilidad que en relación con la prueba testifical haya realizado el juzgador de los hechos en el ámbito de instancia en ausencia de pasión, parcialidad o error manifiesto. En ausencia de esa demostración, la determinación a que llegue el foro recurrido será merecedora de gran deferencia por parte del tribunal apelativo por cuanto el juzgador en instancia es quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos. Pueblo v. Bonilla Romero, 120 D.P.R. 92 (1987); Pueblo v. Cabán Torres, 117 D.P.R. 645 (1986).
Una lectura integral del recurso revela que el peticionario no ha demostrado que el foro recurrido haya actuado de forma parcial, prejuiciada o influenciada por alguna pasión que justifique que debamos intervenir con sus determinaciones. Por otro lado, examinados los principios normativos, no existe base para caracterizar la prueba de cargo como floja, descarnada, irreal, improbable o estereotipada y así resolver de modo distinto a lo resuelto por el ilustrado foro recurrido.
Por otro lado, motivos fundados para creer que la persona arrestada ha cometido un delito grave, por el cual se le arresta, consiste en la posesión de aquella información y conocimiento que llevan a una persona ordinaria y prudente a creer que el arrestado ha cometido un delito, Pueblo v. Cabrera Cepeda, 92 D.P.R. 70 (1965); y ello independientemente de que luego se establezca o no la comisión del delito. Pueblo v. Martínez Torres, 120 D.P.R. 497, 504 (1988). Véase además, Pueblo v. Alcalá Fernández, 109 D.P.R. 326 (1980); Pueblo v. González Rivera, 100 D.P.R. 651, 654-655 (1972). Sobre el concepto de motivos fundados, nuestro Tribunal Supremo en Pueblo v. Díaz Díaz, 106 D.P.R. 348, 353 (1997), expresó que dicha frase es sinónima de causa probable, término utilizado en el contexto de la expedición de una orden de arresto.
La existencia de “motivos fundados” para el arresto sin orden de magistrado es el resultado de una rápida evaluación de circunstancias en la cual el oficial de la policía llega a la conclusión de que la persona ha cometido un delito en su presencia. Para así concluir, el agente debe relacionar el comportamiento de la persona frente a él, con los hábitos de conducta y manera de actuar de infractores de la Ley en circunstancias similares. Esto requiere el conocimiento de usos y costumbres de los infractores con los cuales el policía está familiarizado, especialmente si se trata de delitos comunes de alta incidencia. Cada delito tiene unas características externas, una manera de realizarse, que lo proyectan visualmente, tipifican la circunstancia delictiva y dirigen el raciocinio hacía la concreción de motivos fundados para el arresto.
Los hechos del presente caso reflejan que el agente Romero estaba prestando vigilancia motivado por confidencias de trasiego de drogas. Estando en el lugar indicado, observó al peticionario caminar frente al plantel escolar, a un menor acercarse a éste entregándole dos (2) billetes y al peticionario entregarle al menor un *728 sobrecito transparente. Sus observaciones lo motivaron a pensar que había presenciado una transacción de drogas.
De ese testimonio se desprende que el agente Romero tenía motivos fundados para creer que el peticionario cometió un delito en su presencia. En consideración a lo cual, la incautación de las diecisiete (17) bolsitas de marihuana no fue el producto de un registro ilegal e irrazonable por parte del Estado.
Como hemos mencionado, la vista de supresión tiene el propósito de determinar la legalidad y razonabilidad de la ocupación de la evidencia delictiva sin orden judicial no está en controversia la culpabilidad o inocencia del acusado.
En mérito a lo expuesto, denegamos la expedición del auto solicitado y devolvemos el caso al Tribunal de Primera Instancia, Sala Superior de Utuado, para la continuación de los procedimientos.
Así lo acordó el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General